JAMES E. BURNS, JR. (STATE BAR NO. 53250)
JUSTIN MYER LICHTERMAN (STATE BAR NO. 225734)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: 415-773-5700
Facsimile: 415-773-5759

Attorneys for Defendants
OPSYS LIMITED, a United Kingdom Company
CDT LIMITED, a UK Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

Plaintiff,

v.

OPSYS LIMITED, a United Kingdom Company, CDT LIMITED, a UK Company,

Defendants.

Case No. C 05-00553 MHP

**DEFENDANTS OPSYS LIMITED AND CDT LIMITED'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR MONETARY DAMAGES, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES**

Date: Monday, April 11, 2005
Time: 2:00 p.m.
Courtroom: 15, 18th Floor

TO PLAINTIFF AND COUNSEL OF RECORD

PLEASE TAKE NOTICE THAT on April 11, 2005, at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15 of this Court, located at Courtroom 15, 18th floor, 450 Golden Gate Avenue, San Francisco, CA, 94102, before the Honorable Judge Marilyn Hall Patel, the defendants Opsys, Limited and CDT Limited will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b) (and, to the extent that consideration of matters outside of the complaint convert this motion into one for summary judgment, under Federal Rule of Civil Procedure 56) for an order dismissing this action without leave to amend. This motion is made on the following grounds:

**As to the first cause of action**, plaintiff cannot allege breach of contract against Defendants CDT because CDT never was a party to any agreement with plaintiff. Plaintiff cannot allege breach of contract against defendant Opsys, Limited, because plaintiff effected a novation agreement and released Opsys, Limited from all obligations under the contract for valuable consideration. **As to the second cause of action**, plaintiff has failed to plead fraud with the requisite particularity.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declarations of Michael Holmes and Stephen Chandler filed and served herewith, Defendants Request for Judicial Notice filed and served herewith, oral argument, and upon the papers, records and pleadings on file herein.

DATED: February 28, 2005

Justin M. Lichterman
Orrick Herrington & Sutcliffe, LLP
Attorneys for Defendants Opsys Limited and CDT Ltd.

**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Corporate Relationship Between CDT and Opsys .......... 2

B. Opsys Assigns the Lease to Opsys US with the Plaintiff's Knowledge and Consent .......... 3

C. Opsys US's Creditors Force the Company into Bankruptcy, Where Plaintiff is an Active Participant in its Capacity as Opsys US's Landlord .......... 4

D. Plaintiff Sues CDT and Opsys .......... 5

III. LEGAL STANDARDS .......... 5

A. Motion to Dismiss .......... 5

B. The Court May Consider All Documents Constituting the Entirety of the Lease for Purposes of a Motion to Dismiss .......... 6

IV. ARGUMENT .......... 7

A. Breach of Contract Claim .......... 7

B. Plaintiff Fails to Plead Fraud with the Requisite Particularly Pursuant to Federal Rule of Civil Procedure 9(b) .......... 9

V. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND .......... 11

VI. CONCLUSION .......... 12

## TABLE OF AUTHORITIES

Page

### CASES

*Albrecht v. Lund*, 845 F.2d 193 (9th Cir. 1988) ........ 11

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) ........ 5

*Bloom v. Martin*, 865 F. Supp. 1377 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (9th Cir. 1996) ........ 5

*Branch v. Tunnel*, 14 F.3d 449 (9th Cir. 1994) ........ 6

*Cicone v. Urs Corp.*, 183 Cal. App. 3d 194 (1986) ........ 9

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) ........ 9

*Durning v. First Boston Corp.*, 815 F.2d 1265 (9th Cir. 1987) ........ 3, 6

*Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995) ........ 9

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086 (C.D. Cal. 1999) ........ 9

*In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ........ 9

*In re McSheridan*, 184 B.R. 91 (9th Cir. 1995) ........ 8

*In re Stac Electronics Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996) ........ 6

*In re Verifone Sec. Litig.*, 11 F.3d 865 (9th Cir. 1993) ........ 5

*Meadows v. Lee*, 175 Cal. App. 3d 475 (1985) ........ 8

*Mishler v. Clift*, 191 F.3d 998 (9th Cir. 1999) ........ 6

*Moore v. Brewster*, 96 F.3d 1240 (9th Cir. 1996) ........ 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989)........ 9

*New Hampshire v. Maine*, 532 U.S. 742 (2001)........ 9

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998)........ 6

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192 (3d Cir. 1993)........ 6

*Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001)........ 9

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393 (9th Cir. 1986)........ 11

*U.S. v. Nukida*, 8 F.3d 665 (9th Cir. 1993)........ 5

*Wagner v. Professional Engineers in California Government*, 354 F.3d 1036 (9th Cir. 2004)........ 9

**STATUTES**

11 U.S.C. §§ 365(g), 502(b)(6)........ 8

11 U.S.C. section 365(d)(4)........ 4

Cal. Civ. Code § 1531(2)........ 8

Cal. Civ. Code § 1709........ 9

Fed. R. Civ. P. 9(b)........ 9, 10

**MISCELLANEOUS**

4 Collier on Bankruptcy ¶ 502.03[7][b] (15th ed. rev.)........ 8

## I. INTRODUCTION

Plaintiff Sunnyside Development Company, LLC (hereinafter "Plaintiff") brought this frivolous action in State court in an opportunistic effort to extort from defendants monies to which it plainly is not entitled. Not only does Plaintiff's sparse complaint fail to satisfy even the most basic pleading requirements, Plaintiff deliberately neglects to disclose key facts about the lease at issue in this case because it knows that they bar its recovery.

Cambridge Display Technology Limited. ("CDT") and Opsys, Limited ("Opsys") (collectively, "Defendants") removed the action to Federal court on grounds of diversity jurisdiction. Neither CDT nor Opsys are parties to the lease in question, however, and so cannot be liable for its breach. Plaintiff's actual tenant was an independent subsidiary of Opsys called Opsys US (hereinafter "Opsys US"). Indeed, Plaintiff fails even to mention that the lease at issue here was assigned to Opsys US with Plaintiff's full knowledge and consent, and that Plaintiff released Opsys from any and all liability under the lease in consideration for $50,000 in cash. CDT never was a party to the lease, and Opsys was substituted out as a party responsible for the lease by virtue of the novation agreement.

As if that alone were not enough to compel dismissal, Plaintiff actively participated in Opsys US's bankruptcy, making sure to safeguard its rights as Opsys US's landlord per the novation agreement. Although the lease was terminated automatically as a matter of bankruptcy law, Plaintiff never objected on the grounds that the debtor was not its tenant and that the lease therefore could not be terminated in bankruptcy. Instead, Plaintiff held itself out as Opsys US's landlord and brought (and settled) claims against the estate in that capacity. Plaintiff also petitioned the bankruptcy court for and won an order allowing it to pursue the proceeds of an insurance policy purchased by Opsys US as a precondition to the assignment. These actions are wholly inconsistent with the claims in the instant complaint.

The complaint is facially deficient too. Throughout, Plaintiff lumps CDT and Opsys together as generic "defendants," failing to plead any intelligible facts that explain who took what actions when, which defendant, if any, was a party to the lease and when, and why each defendant should be liable for breach of contract. The complaint also is devoid of *any* particularized facts to

support Plaintiff's fraud claims. Accordingly, CDT and Opsys have insufficient notice of the nature of the claims against each of them, and the complaint must be dismissed.

## II. FACTUAL BACKGROUND

### A. Corporate Relationship Between CDT and Opsys

CDT was founded in 1992 by Cambridge University in England, in order to develop intellectual property and know-how relating to organic light emitting diodes, or "OLEDS". These OLEDS potentially will be the new generation of display technology expected to replace liquid crystal displays and other current display technologies in various products, such as personal digital assistants and televisions. Between 1992 and 2002, CDT grew as a successful market innovator, and continues to do so today. *See* Declaration of Stephen Beverley John Chandler in Support of Defendants Motion to Dismiss Plaintiff's Complaint (hereinafter "Chandler Decl.") at ¶ 2.

In October 2002, as part of its strategy to consolidate organic light emitting intellectual property, CDT acquired control of Opsys's English business, Opsys UK Limited (hereinafter "Opsys UK"), a company that owned and developed intellectual property and know-how relating to a type of material, known as dendrimers, used in OLEDs, through a cash and deferred stock transaction. As a result of the deal, CDT acquired control of Opsys's dendrimer OLED intellectual property and assumed the management of the commercial and technical development of Opsys's business and staff dedicated to dendrimer intellectual property.[1] Importantly, however, Opsys's pilot line manufacturing facility owned by its United States business, Opsys US (hereinafter "Opsys US") was not part of the deal; it remained an independent business focused on small molecule and non-dendrimer technologies, but retained privileged rights to use dendrimers and other technologies developed by Opsys. *See* Declaration of Michael Holmes in Support of Defendants Motion to Dismiss Plaintiff's Complaint (hereinafter "Holmes Decl."), ¶¶ 2-4; Chandler Decl. ¶¶ 4-5.

[1] Essentially, CDT purchased Opsys's OLED business line only.

**B. Opsys Assigns the Lease to Opsys US with the Plaintiff's Knowledge and Consent**

In February 2001, Opsys entered into a lease with Plaintiff to rent certain property owned by Plaintiff in Fremont, California. The parties concurrently executed a Standard Industrial/Commercial Single-Tenant Lease and an Addendum thereto (hereinafter "the Lease"). On September 1, 2002, Opsys and Plaintiff amended the Lease pursuant to Amendment No. 1 to Lease. See Defendants Opsys Ltd and CDT Ltd's Request for Judicial Notice (hereinafter "RJN"), Ex. A and B.

After the October 2002 acquisition of Opsys UK by CDT, Opsys US remained an independent business focused on small molecule and non-dendrimer technologies, and continued to own the pilot line manufacturing facility. Accordingly, in order to reflect the post-acquisition corporate reality, Opsys segregated its operations from those of Opsys US, and on October 18, 2002, Opsys, Opsys US and Plaintiff executed an Assignment of Lease and Consent of Lessor (the "Assignment"), whereby Opsys substituted out of the agreement by an assignment of the Lease to Opsys US. *See* Holmes Decl., ¶ 6; RJN Ex. C.

Opsys did not need Plaintiff's consent to sublease to Opsys US pursuant to paragraph 56 of the Lease because (a) Opsys owned or beneficially controlled a majority of the outstanding ownership interest in Opsys US, and (b) Opsys US was a subsidiary of Opsys. *See* RJN Ex. C (Addendum). *See* Holmes Decl., ¶ 5. Nevertheless, Opsys sought and Plaintiff expressly consented to the Assignment by signature of its manager, Richard Eng. Furthermore, pursuant to paragraph 7 of the Assignment, Plaintiff released Opsys from any and all liability or obligation on the Lease in consideration for payment of $50,000. Plaintiff accepted the $50,000 by retaining that amount from Opsys's $250,000 cash security deposit, which was the method of payment provided for in the Assignment. *See* RJN Ex. C at ¶ 7.

Pursuant to paragraph 2 of the Assignment, the Assignment became effective once four conditions were met. *First*, Plaintiff and Opsys US agreed to a proposed Amendment No. 2 to Lease contemporaneously with the Assignment. *Second*, Opsys US was to deposit a letter of credit portion of a security deposit described in Amendment No. 2, which it duly did. *Third*,

Opsys had to procure a pollution liability insurance policy pursuant to Amendment No. 2, which it secured from American International Specialty Lines Insurance Company effective from October 28, 2002. *See* RJN Ex. D. *Fourth* and finally, Opsys agreed to pay Plaintiff's legal fees in connection with the Assignment, which it duly did.[2]

**C. Opsys US's Creditors Force the Company into Bankruptcy, Where Plaintiff is an Active Participant in its Capacity as Opsys US's Landlord**

On May 5, 2003, four creditors of Opsys US filed involuntary petitions for bankruptcy against Opsys US. *See* RJN Ex. E. From the outset, Plaintiff took a particularly active role in the bankruptcy proceedings, injecting itself into every major aspect of the case. Plaintiff's representative, Frank Chiu, filed a Declaration in Support of Motion to Appoint Trustee, stating that Plaintiff is "the landlord of the premises in which the Debtor [Opsys US] is currently located." *See* RJN Ex. F at 1.

Although Plaintiff's Lease was rejected by operation of law pursuant to bankruptcy code section 365(d)(4),[3] Plaintiff remained heavily involved in proceedings. In particular, Plaintiff believed that it had a pre-petition unsecured claim and an administrative claim against the estate to clean up various chemicals and hazardous waste on the premises. The Trustee disagreed because the Lease terminated as a matter of law. *See* RJN Ex. J at 2.

On August 11, 2003, Plaintiff objected to the Trustee's sale of assets, referring to itself as "the landlord herein." *See* RJN Ex. H at 1. In its motion and the attendant Declaration of Frank Chiu in Support of Objection to Sale of Assets, Plaintiff admitted that the Lease was terminated in bankruptcy, and that the premises had been occupied by a third-party purchaser of Opsys US's assets. *See* RJN Ex. I at 2.

On January 26, 2004, Plaintiff and the Trustee settled the administrative claim and the bankruptcy court entered an Order Approving Compromise of Controversy. Pursuant to the

---

2 Plaintiff does not allege any failure to meet the conditions precedent.

3 11 U.S.C. section 365(d)(4) states in pertinent part:

> [I]n a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief . . . then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

agreement and order, Plaintiff waived its administrative claim and the Trustee agreed to pay up to $120,000 towards environmental clean up and to allow Plaintiff to proceed against Opsys US's environmental insurance policy. *See* RJN Ex. K.

On September 24, 2004, Plaintiff brought a motion in bankruptcy court seeking relief from the automatic stay in order to proceed against Opsys US's insurance policy for alleged environmental cleanup damages. In its motion, again supported by a declaration from Frank Chiu, Plaintiff admitted that "[t]he policy of insurance was issued in favor of the debtor [Opsys US]." *See* RJN Ex. L at 2. The bankruptcy court granted the motion on October 22, 2004, "permitting [Plaintiff] to pursue collection outside the bankruptcy to obtain insurance benefits under the debtor's insurance policy." See RJN Ex. N.

### D.   Plaintiff Sues CDT and Opsys

On December 14, 2004, Plaintiff filed a lawsuit against CDT and Opsys. Plaintiff alleges two causes of action: (1) various breaches of certain provisions of the Lease; and (2) fraud. On February 7, 2005, CDT and Opsys removed the action to Federal Court.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint. A claim should be dismissed when "it is clear from [the] face of [the] complaint and judicially-noticed documents that [plaintiff] cannot prevail as a matter of law." *See Bloom v. Martin*, 865 F. Supp. 1377, 1381 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (9th Cir. 1996); *U.S. v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (a motion to dismiss is capable of determination if it involves questions of law). In other words, a complaint must be dismissed if it fails to allege facts sufficient to state a claim for relief under a cognizable legal theory. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Although well-pleaded facts must be accepted as true, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat [a] motion to dismiss." *In re Verifone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993).

**B. The Court May Consider All Documents Constituting the Entirety of the Lease for Purposes of a Motion to Dismiss**

A defendant may attach to a Rule 12(b)(6) motion any documents referred to in the complaint that show that they do not support plaintiff's claim, and the court may consider the full text of a document that the complaint quotes only in part. *See In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996); *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994). Documents not attached to the complaint may be considered by a court on a Rule 12(b)(6) motion if the complaint refers to such document, the document is central to plaintiff's claim, and no party questions the authenticity of the copy attached to the 12(b)(6) motion. *See Mishler v. Clift,* 191 F.3d 998, 1008 n.7 (9th Cir. 1999). Documents deliberately not mentioned in the complaint may be considered on a motion to dismiss. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n. 3 (9th Cir. 1998).

A court may disregard allegations in a complaint that are contradicted by exhibits. *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). This prevents a party surviving a motion to dismiss simply by failing to attach a dispositive document on which it relied. *See Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because Plaintiff premises its breach of contract and fraud claims on the terms of a lease agreement, the Court should consider the Lease *in its entirety* – including all amendments thereto and the Assignment – in deciding this motion. *See In re Stac Electronics*, 89 F.3d 1399.

The Assignment specifically attached the Lease as an exhibit, states that the Lease was "made a part hereof" and later states that "[t]his Assignment, the Lease and such documents as are executed in connection therewith contain the entire agreement of the parties with respect to the subject matter hereof . . . ." *See* RJN Ex. C at ¶ 8(d). Accordingly, the Court may properly consider the Lease, the Assignment, and the amendments in deciding this motion to dismiss because they form the entirety of the lease agreement referred to in the complaint and are central to Plaintiff's claims.[4]

[4] To the extent the Court determines that these are documents extrinsic to the complaint and declines to consider

## IV. ARGUMENT

### A. Breach of Contract Claim

#### 1. Plaintiff's Complaint Fails to Satisfy Basic Notice Pleading Requirements

As a preliminary matter, Plaintiff's complaint should be dismissed for failing even to provide Defendants with notice sufficient to allow an adequate response to its baseless claims. Throughout, the complaint refers to the "parties" to the Lease, but does not distinguish between CDT and Opsys, or even state clearly which of CDT or Opsys (or both) signed the Lease. Rather, the complaint simply lumps CDT and Opsys together as one entity, identified only as a generic "defendant." Accordingly, it is impossible to tell which allegations relate to which defendant. Because CDT and Opsys have no idea (1) on what basis Plaintiff has brought the complaint against CDT, (2) which entity Plaintiff contends was a party to the Lease, (3) which obligations supposedly belong to which entity under the Lease terms, (4) which entity allegedly breached which obligations when, and (5) how Plaintiff can escape the legal effect of the Assignment and amendments, the complaint must be dismissed for failure to meet even basic notice pleading requirements.

#### 2. CDT Never Was Party to the Lease and So Cannot Be Liable for Breach Thereof

Notwithstanding the complaint's other blatant deficiencies, CDT's non-liability is incontrovertible. It is clear from the face of the documents at the heart of this case that CDT never was a party to the Lease – none of the documents bear CDT's name or signature. *See* RJN Ex. A, B and C. Accordingly, Plaintiff cannot *under any circumstances* allege a breach of contract claim against CDT based on the Lease.

#### 3. Opsys Limited is Not Liable for Any Alleged Breach of the Lease by Virtue of the Novation in the Assignment

Plaintiff neglects to plead any facts about the Assignment because it knows that, as a binding novation, it bars any claims against Opsys. As a result of the Assignment, Opsys US

---

them on a motion to dismiss, Defendants respectfully request that the Court treat this motion as one for summary judgment, as permitted by Federal Rule of Civil Procedure 12(b)(6).

replaced Opsys as Plaintiff's tenant and assumed and agreed to perform all of the obligations under the Lease. *See* RJN Ex C at ¶ 3. Plaintiff also "irrevocably and unconditionally" released Opsys from any liability on the Lease in exchange for $50,000 in cash. Plaintiff does not allege that it did not receive the $50,000, nor can it; it simply retained the money from Opsys's already-paid cash security deposit, as provided in the Assignment. *See Id.* at ¶ 7. As a matter of law, the parties therefore executed a novation and Opsys could not and did not breach the Lease. *See* Cal. Civ. Code § 1531(2); *Meadows v. Lee*, 175 Cal. App. 3d 475, 482 (1985) (question of novation is one of law).

Furthermore, Plaintiff's own sworn statements and judicial admissions in the bankruptcy proceedings confirm that Opsys US was its tenant, and thus confirm the novation. In pleadings and a declaration before the bankruptcy court, Plaintiff conceded that "[t]he lease terminated on or about July 7, 2003, by operation of law 60 days after the order for relief was granted." *See* RJN Ex. H at 2; I at 2. Because, as a matter of law, the Lease would not be rejected in bankruptcy unless the debtor – Opsys US – was a party thereto, Plaintiff necessarily concedes that Opsys US, and not Opsys Limited, was its tenant.[5] Based on its sworn representations and Rule 11(b) pleadings in the bankruptcy court stating that Opsys US was its tenant, Plaintiff prevailed on a motion for relief from the bankruptcy stay and procured a favorable settlement with the bankruptcy trustee.

Plaintiff's conduct in the bankruptcy proceedings only bolsters the case for dismissal. For example, Plaintiff filed a proof of claim demanding damages for payments due under the Lease[6] and sought relief from the automatic stay in order to pursue the proceeds of Opsys US's pollution liability insurance policy. Plaintiff also expressly references the pollution liability insurance policy in its Settlement Agreement with the Trustee. In so doing, Plaintiff admitted (a) that the policy exists, (b) that Opsys US was the policy holder, and (c) that, in its view, Plaintiff was

---

[5] Plaintiff therefore necessarily concedes the validity and effectiveness of the Assignment and novation.

[6] Although the lease was rejected by operation of law, the rejection of a lease under section 365 of the Bankruptcy Code is equivalent to a termination of the lease by breach. *See* 4 Collier on Bankruptcy ¶ 502.03[7][b] (15th ed. rev.). The effect of the breach is to permit the landlord to seek allowance of a claim under Bankruptcy Code section 502 as a general, unsecured creditor. *See* 11 U.S.C. §§ 365(g), 502(b)(6); *see also In re McSheridan*, 184 B.R. 91 (9th Cir. 1995). By filing a proof of claim for "Rent," Plaintiff represented and admitted that Opsys US was its tenant. *See* RJN Ex. G.

entitled to the proceeds of the policy. Plaintiff could not have advanced this position unless it also conceded that Opsys US was its tenant, and therefore that the Assignment was effective as a novation. For these reasons, Plaintiff's complaint fails to state a claim for relief against Opsys as a matter of law, based on the four corners of the whole Lease.[7]

**B. Plaintiff Fails to Plead Fraud with the Requisite Particularity Pursuant to Federal Rule of Civil Procedure 9(b)**

1. Legal Standards for Pleading Fraud

"In all averments of fraud . . . the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *see Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000). Because this is a diversity case, Plaintiff must plead the substantive elements of fraud under California law in accordance with Rule 9(b). *See Moore v. Brewster*, 96 F.3d 1240, 1245-56 (9th Cir. 1996). In California, the elements of fraud are: (1) false representation, (2) scienter, (3) intent to induce reliance, (4) justifiable reliance, (5) resulting damage. *See* Cal. Civ. Code § 1709; *Cicone v. Urs Corp.*, 183 Cal. App. 3d 194, 200 (1986).

To satisfy Rule 9(b), Plaintiff must set forth a specific description of the representations made, and explain how and why they were false or misleading when made so that the defendants can prepare an adequate answer from the allegations. *See Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995); *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). A plaintiff cannot satisfy this heightened pleading standard by pleading fraud by hindsight, i.e. relying on subsequent events to demonstrate the falsity of an earlier statement. *See Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001); *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999). To properly plead the circumstances of fraud, Plaintiff must specify the alleged fraudulent representations, allege that they were false when made, identify the speaker, state when and where the statements were made, and state the manner in which the misrepresentations were misleading. *See In re Glenfed,* 42 F.3d at 1548. This Plaintiff does not (and cannot) do.

[7] Plaintiff's representations and conduct in bankruptcy court also raises judicial estoppel issues. *See New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *Wagner v. Professional Engineers in California Government*, 354 F.3d 1036, 1044 (9th Cir. 2004).

2. Plaintiff Has Not Plead Fraud With the Requisite Particularity, But Rather Has Simply Restated its Breach of Contract Claims under a Different Name

As previously noted, the complaint fails to distinguish between CDT and Opsys, but simply lumps them together as one, generic entity identified only as "defendant." Accordingly, because it is impossible to tell which allegations relate to which defendant, the complaint does not come close to satisfying the requirements of Rule 9(b).

Plaintiff's sole allegation of any false representation is that Opsys's CEO, CFO "and other officials of defendant" entered into a lease agreement wherein someone (it is unclear from the complaint who) agreed to pay rent each month, agreed to make some improvements to the property, and agreed not to violate any environmental laws or incur any mechanics liens on the property. Compl. ¶ 15. The only persons alleged to have made these statements are officers of Opsys. Because Plaintiff lumps Opsys and CDT together, however, one cannot tell whether the "other officials of defendant" were Opsys or CDT "officials." Nevertheless, on its face the complaint makes no allegation of fraud as to CDT, nor can it; CDT was not a party to and made no representation in connection with the Lease. In the final analysis, however, Plaintiff cannot plead fraud as to CDT under any circumstances since CDT never entered into any agreement with Plaintiff, and Opsys is not liable because of the novation agreement in the Assignment.

Apparently, Plaintiff believes that an alleged subsequent breach of certain lease provisions demonstrates that "defendants" falsely represented that they would abide by those provisions when the contract was made. To the extent this claim can be construed as one for fraud, it is classic fraud by hindsight. The complaint is devoid of any well-pleaded facts that Defendants knowingly made false representations about anything *at the time the Lease was signed.* Apart from a few conclusory allegations of falsity, Plaintiff fails to explain *how* and *why* the Lease terms were false or misleading *when made*.

In reality, Plaintiff's claim is not one for fraud at all; rather, it is a simple restatement of the breach of contract claim under a different name. By alleging that Defendants failed to do what they said they would do – and nothing more – Plaintiff alleges only that Defendants failed to fulfill their contractual obligations. Plaintiff itself admits that "defendant also agreed to make

certain capital improvements on the property, *as consideration for the leased* [sic]." Compl. ¶ 8 (emphasis added). Plaintiff's claim therefore rests on an alleged failure to pay the bargained for consideration in return for the right to possess the leased property. No matter how hard Plaintiff tries, it cannot restyle its contract claim as one for fraud.

Finally, Plaintiff does not bother to allege scienter even in a conclusory fashion. In order to do so, Plaintiff would have to plead facts that show that Defendants agreed to each specific lease term that they allegedly breached with the intent of not honoring those terms. Since CDT never was a party to the Lease, that showing is impossible as to CDT. Nor does Plaintiff make any such allegation with respect to Opsys.

## V.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

A court should dismiss a complaint without leave to amend if it determines that allegations of other facts consistent with the challenged pleading could not possibly cure the defect. *See Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Plaintiff cannot allege any facts consistent with the allegations in this complaint that will cure the defects described above. CDT never was a party to the Lease, the Assignment or either amendment, and so could not have breached the Lease or committed fraud in connection with it. Nothing plaintiff alleges will change that fact.

Similarly, Plaintiff cannot consistently with this complaint allege that Opsys is a party to the Lease in light of the novation agreement in the Assignment and its own inescapable admissions and conduct in the bankruptcy proceedings.[8] Because any amendment to the complaint would be futile, the action should be dismissed without leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195-6 (9th Cir. 1988).

//

//

//

---

[8] Any such pleading would also be inconsistent with Plaintiff's prior sworn statements and Rule 11(b) pleadings in the bankruptcy case.

**VI. CONCLUSION**

For the foregoing reasons, Defendants CDT and Opsys respectfully request that the Court grant Defendants' motion to dismiss without leave to amend. Alternatively, Defendants respectfully request that the Court grant summary judgment in their favor.

Dated: February 28, 2005

JAMES E. BURNS, JR.
JUSTIN MYER LICHTERMAN
ORRICK, HERRINGTON & SUTCLIFFE LLP

Justin M. Lichterman
Attorneys for Defendants
OPSYS LIMITED, a United Kingdom Company,
CDT LIMITED, a UK Company