

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNNYSIDE DEVELOPMENT COMPANY, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>OPSYS LIMITED and CDT LIMITED,<br><br>    Defendants.<br>_____/ | No. C 05-0553  MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Defendants' Motion to Dismiss** |

On December 14, 2004, plaintiff Sunnyside Development Company, LLC filed this action for breach of contract and fraud in state court, naming Opsys Limited and CDT Limited as defendants. That action was subsequently removed to this court, and defendants now move for partial dismissal of plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND[1]

Plaintiff Sunnyside Development Company is the lessor of a commercial property located at 47375 Fremont Boulevard in Fremont, California. On February 15, 2001, plaintiff agreed to lease commercial space at the Fremont Boulevard property to defendant Opsys Limited, with the lease term running from May 1, 2001 through April 30, 2008. Pursuant to the conditions of the lease

agreement, Opsys Limited agreed to pay plaintiff a monthly base rent, to make certain capital improvements, and to conduct its business in an environmentally safe manner.

Opsys Limited continued to make rental payments to plaintiff until October 2002. At that time, defendant CDT Limited ("CDT") acquired control of Opsys' British business, Opsys UK Limited ("Opsys UK"). As part of the corporate reorganization accompanying that transaction, plaintiff, Opsys Limited, and Opsys' United States subsidiary, Opsys US, signed a novation agreement that purportedly assigned Opsys Limited's rights and obligations under the lease to Opsys US. Under the terms of paragraph six of the novation agreement, the assignment was subject to a number of conditions precedent, including a provision requiring that both parties execute a second amendment to the lease.

Plaintiff received no rental payments after October 2002, and Opsys US was forced into involuntary bankruptcy by four of its creditors in May 2003. On December 14, 2004, plaintiff filed this action in the Superior Court for Alameda County, pleading causes of action for breach of contract and fraud under California law. That action was subsequently removed to this court, and on February 28, 2005, defendants moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff had failed to state a claim under either of the asserted causes of action. With respect to plaintiff's breach of contract claims, defendants argued that CDT was never a party to the Fremont Boulevard lease and that Opsys Limited had been released from its obligations under the lease agreement by the October 2002 novation agreement. As for plaintiff's fraud claim, defendants argued that plaintiff had failed to plead the elements of fraud with particularity, as is required by Federal Rule of Civil Procedure 9(b).

On April 22, 2005, the court issued an order granting defendants' motion in part and denying it in part. Specifically, the court agreed with defendants that plaintiff's complaint fails to allege that CDT had ever been a party to the lease agreement, thus warranting dismissal of the breach of contract claim against CDT. The court also dismissed the fraud claims against both defendants on the ground that plaintiff had failed to satisfy the pleadings requirements of Rule 9(b). However, in considering the breach of contract claim against Opsys Limited, the court rejected defendants'

2

argument that the terms of the novation agreement warranted granting their motion to dismiss. Specifically, the court concluded that because defendants had failed to submit a signed copy of the second amendment to the lease, it could not be determined from the face of the pleadings whether all of the conditions precedent to releasing Opsys Limited from liability for failure to comply with the conditions of the lease had been fulfilled.[2] Thus, drawing all reasonable inferences in favor of the nonmoving party, the court held that plaintiff had stated a claim for breach of contract against Opsys Limited.

On May 11, 2005, plaintiff filed an amended complaint, having been granted leave to do so for the purpose of curing the deficiencies in the December 2004 complaint that the court had identified in its April 2005 order. In the amended complaint, plaintiff again pleads causes of action for breach of contract and fraud against both defendants. However, in contrast to plaintiff's prior pleadings, the amended complaint now alleges that Opsys Limited acted as the alter ego of CDT in entering into and breaching the lease agreement, thereby entitling plaintiff to recover damages for breach of contract from CDT as well as from Opsys. As for plaintiff's fraud claims, the gravamen of those claims continues to lay, as it did in the initial complaint, in plaintiff's theory that Opsys Limited induced plaintiff to enter into the February 2001 lease agreement without ever having any intention to perform its obligations as lessee of the Fremont Boulevard property, although plaintiff now seeks to overcome the hurdle posed by Rule 9(b)'s particularity requirement by identifying several of Opsys Limited's officers as the source of the actionable misrepresentations that defendants allegedly made.

On May 31, 2005, defendants moved for partial dismissal of the amended complaint, arguing that plaintiff had again failed to state a claim for breach of contract against CDT or to plead adequately the required element fraud against either defendant. The following memorandum and order addresses those arguments.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Unless it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief, a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When assessing the legal sufficiency of a plaintiff's claims, the court must accept as true all material allegations of the complaint, and all reasonable inferences must be drawn in favor of the non-moving party. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) (citations omitted). Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

DISCUSSION

I.  Breach of Contract (Against CDT)

Defendants first move to dismiss plaintiff's breach of contract claim against CDT.  While plaintiff concedes that CDT is not a party to the lease agreement that is the subject of its breach of contract claims, it nevertheless asserts that Opsys Limited acted as CDT's alter ego in entering into and subsequently breaching the lease.  Thus, according to plaintiff, the court should pierce CDT's corporate veil and hold it liable for Opsys Limited's failure to perform its contractual duties.

As an initial matter, the court notes that although neither party has addressed the issue of choice of law, CDT is incorporated in the United Kingdom.  As there is no relevant contractual choice of law provision, the choice of law issue turns on whether the law of the forum state or the law of CDT's place of incorporation should govern the alter-ego inquiry.  In this diversity action, the answer to that question must be determined based on California choice of law rules.  See Klaxon Co. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

1       In Schlumberger Logelco, Inc. v. Morgan Equipment Co. , No. C 94-1776 MHP, 1996 WL
2   251951 (N.D. Cal. May 3, 1996) (Patel, J.), this court considered a similar issue arising from a
3   plaintiff's attempt to hold an Austrian corporation liable for breach of contract and various torts
4   under an alter-ego theory. See id. at *1, *3. Applying the "governmental interest" analysis that
5   California courts employ in adjudicating choice of law issues, see In re Yagman, 796 F.2d 1165,
6   1170 (9th Cir. 1986), amended on denial of reh'g, 803 F.2d 1085 (9th Cir. 1986), cert. denied, 484
7   U.S. 963 (1987), the court observed that Austria, as the state of incorporation, had "a substantial
8   interest in determining whether to pierce the corporate veil of one of its corporations."
9   Schlumberger, 1996 WL 251951, at *3. The court therefore concluded that Austrian law supplied
10  the rules of decision for determining whether to hold the defendant corporation liable under an alter-
11  ego theory. Id. at *4.

12      In the absence of any attempt by either party to brief the choice of law issue, the court sees no
13  reason to depart from the analysis set forth in the Schlumberger case. Thus, applying that analysis in
14  the case at bar, the court must look to British corporations law for the purpose of determining
15  whether plaintiff has alleged facts that support piercing CDT's corporate veil.[3] In essence, the theory
16  of alter-ego liability set forth in the amended complaint turns on allegations that defendants entered
17  into secret negotiations in early 2001, pursuant to which CDT sought to acquire Opsys Limited's
18  British operations and to divest itself of any liability associated with the target company's American
19  business, including Opsys' contractual liability to plaintiff. According to plaintiff, the allegations
20  concerning this collaboration, which it alternatively characterizes as a conspiracy to breach the lease
21  agreement,[4] are sufficient to permit a finding that Opsys Limited acted as CDT's alter-ego in its
22  dealings with plaintiff.

23      The court finds this argument unavailing. Certainly, the corporations law of the United
24  Kingdom recognizes circumstances where a corporate subsidiary can be considered the alter ego of
25  its parent corporation. See Palmers Company Law § 2.1519 ¶ 11 (2004) (observing that "there are
26  many cases in which the distinction between parent and subsidiary company has been ignored by the
27  court"). It nevertheless remains true that piercing the corporate veil under British law generally
28

5

requires that the parent exercise a significant degree of control over the subsidiary, going beyond mere formal ownership and coordination of corporate strategies and extending to the direct supervision of the subsidiary's day-to-day business activities.  See, e.g., Adams v. Cape Indus., Plc., [1990] Ch. 433 (holding that facts establishing a disregard for corporate formalities among members of an integrated mining group and the parent's strategic supervision of the subsidiary in question were not sufficient to pierce the parent's corporate veil under an alter-ego theory).  In any event, plaintiff does not allege that the parent-subsidiary relationship in question even existed at the time that it entered into the lease agreement with Opsys Limited, much less that the relationship was one in which the parent controlled the affairs of the subsidiary to such an extent as would justify piercing CDT's corporate veil.  In fact, the court is unaware of any authority, in British law or otherwise, that would permit it to pierce the veil of an acquiring corporation based on the facts alleged in the amended complaint, and plaintiff has done nothing to assist the court in identifying any authority that so holds.  For that reason, the court must conclude that the allegations in plaintiff's amended complaint do not support holding CDT liable for the breach of contract under an alter-ego theory.

This alone is sufficient to justify dismissal of plaintiff's breach of contract claim against CDT.  In addition, defendants correctly point out that plaintiff's alter-ego theory is premised upon allegations of fraudulent conduct.  As the Ninth Circuit observed in Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003), such allegations are deemed to "sound in fraud" even if they are pleaded in support of a cause of action in which fraud is not a required element.  See id. at 1103-04.  Consequently, a plaintiff alleging a fraudulent course of conduct to support such a claim must satisfy the heightened pleading standard of Federal Rule Civil Procedure 9(b), id., which requires that the circumstances constituting fraud be pleaded with particularity.  Fed. R. Civ. Pro. 9(b).  Moreover, where, as here, a plaintiff levels allegations of fraud against more than one defendant, Rule 9(b) "requires that a plaintiff plead with sufficient particularity attribution of the alleged misrepresentations or omissions to each defendant."  In re Silicon Graphics, Inc. Sec. Litig., 970 F.Supp. 746, 752 (N.D. Cal. 1997) (Smith, J.).  That requirement is clearly not satisfied by plaintiff's allegations against CDT, as the only particularized allegations of fraud in the amended complaint

1 involve the conduct of Opsys Limited and its officers. Thus, even if the facts that plaintiff has
2 alleged would permit a jury to hold CDT liable under an alter-ego theory (and they do not), those
3 allegations are not pleaded with adequate specificity to withstand a motion to dismiss under Rule
4 9(b). Thus, for this reason, as well as for the reasons stated above, the court holds that plaintiff's
5 breach of contract claim against CDT must be dismissed.

6 II.     Fraud (Against Both Defendants)

7       The second issue raised by defendants' motion to dismiss requires the court to consider
8 whether plaintiff's amended complaint states a claim for fraud. Under California law, the elements
9 of fraud are (1) a misrepresentation by the defendant; (2) knowledge of falsity (scienter); (3) intent to
10 induce reliance; (4) justifiable reliance; and (5) resulting damage. Bank of the West v. Valley Nat'l
11 Bank of Ariz., 41 F.3d 471, 477 (9th Cir. 1994) (citation omitted) (applying California law).
12 Defendants argue that plaintiff's amended complaint fails to allege at least two of these elements, the
13 existence of an actionable misrepresentation and scienter, and thus urges the court to dismiss the
14 fraud claims that plaintiff has leveled against both Opsys Limited and CDT.

15       Before turning to the substance of those allegations, the court notes that while plaintiff
16 repeatedly alleges that "defendants" engaged in fraudulent conduct, nothing in the amended
17 complaint identifies any specific false or misleading statement that CDT or its employees or agents
18 might have made in connection with the Fremont Boulevard lease. As the court has previously
19 noted, such generalized allegations of fraud are not sufficient to state a claim under Federal Rule of
20 Civil Procedure 9(b). Moreover, the preceding discussion makes it equally clear that CDT cannot be
21 held liable for any fraudulent acts that Opsys Limited might have committed in the course of its
22 dealings with plaintiff. Thus, for the same reasons that plaintiff is unable to state a claim for breach
23 of contract against CDT, the fraud claim against CDT must also be dismissed.

24       That leaves the court to consider whether plaintiff can state a claim for fraud against Opsys
25 Limited. As noted above, Federal Rule of Civil Procedure 9(b) requires that "the circumstances
26 constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Ninth
27 Circuit law, those "circumstances" include the precise "time, place, and nature of the misleading
28

statements, misrepresentations, [or] specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994) (citations omitted), cert. denied, 516 U.S. 810 (1995). In addition, the Ninth Circuit has observed that plaintiffs seeking to satisfy Rule 9(b) must "set forth an explanation as to why the statement or omission complained of was false and misleading." In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

What plaintiff has alleged in the amended complaint is in essence a claim for promissory fraud. Specifically, plaintiff asserts that at or about the time that the February 2001 lease agreement was signed, Opsys Limited CEO Gary Rhea and other representatives of "defendants" made promises to comply with the conditions of that agreement without ever having any intention of keeping that promise. Pl.'s Am. Compl. ¶ 15. There is little doubt that these alleged misrepresentations are sufficiently specific so as to permit defendants to identify the circumstances of the alleged fraud and to answer plaintiff's amended complaint, which would generally be enough to satisfy the requirements of Rule 9(b). See Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1996); see also Vess, 317 F.3d at 1106 (citation and original alteration omitted) (noting that Rule 9(b) requires a plaintiff to allege facts that are "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong"). The court thus finds that plaintiff has adequately pleaded at least one actionable misrepresentation.

That being the case, a plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. See GlenFed, 42 F.3d at 1546. It is true that the requirement for pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud," as Rule 9(b) states that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn." Cooper v. Pickett, 137 F.3d 616, 628 (9th Cir. 1997) (quoting Glenfed, 42 F.3d at 1546). In the complaint at issue here, the sum of the "facts" tending to show scienter is a reference to the existence of "much evidence" that Opsys Limited never intended to

8

1  perform its obligations under the lease agreement. Pl.'s Am. Compl. ¶ 15. Even when viewed in the
2  light most favorable to plaintiff, such a conclusory statement falls well short of what would be
3  required to permit a reasonable finder of fact to infer that Opsys Limited was acting with fraudulent
4  intent when it entered into the lease agreement in February 2001.

5  Other than the above-cited allusion to "evidence" of defendants' intent to defraud, the sole
6  basis for inferring scienter from the allegations in the amended complaint is premised upon
7  plaintiff's assertion that Opsys Limited promised to comply with the terms of the lease agreement
8  but failed to do so. However, the mere fact that a party breaches a promise to perform a condition of
9  contract is as a matter of law insufficient to give rise to an inference that the breaching party acted
10 with fraudulent intent at the time that the promise was made. See Tenzer v. Superscope, Inc., 39
11 Cal. 3d 18, 30 (1985) (quoting People v. Ashley, 42 Cal. 2d 246, 263 (1954)) (noting that
12 "something more than nonperformance is required to prove the defendant's intent not to perform his
13 promise"). Thus, seeing that plaintiff has made no effort to allege facts beyond Opsys Limited's
14 failure to perform as promised in its attempt to plead the scienter element of common law fraud, the
15 court is compelled to conclude that plaintiff's fraud claims against both defendants fail as a matter of
16 law. The court therefore grants defendants' motion for partial dismissal in its entirety.

17 III.    Leave to Amend

18 The sole remaining issue is whether, in light of the foregoing discussion, plaintiff should be
19 given leave to file a second amended complaint. In determining whether it should grant leave to
20 amend a complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3)
21 prejudice to the defendant; (4) futility of amendment; and (5) whether the plaintiff has previously
22 amended his or her pleadings. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (citing Bonin v.
23 Calderon, 59 F.3d 815, 845 (9th Cir. 1995)), reh'g and reh'g en banc denied, 375 F.3d 810 (9th Cir.
24 2004), cert. denied, __ U.S. __, 125 S. Ct. 1395 (2005). Here, plaintiff has already failed in two
25 attempts to plead facts that might lend support to its conclusory allegations regarding defendants
26 purportedly fraudulent and conspiratorial conduct. Because there is no reason to believe that a third
27 attempt to do so would be any more successful than the first two, the court sees no reason to grant
28

plaintiff leave to amend its pleadings. Accordingly, the court holds that plaintiff's breach of contract claim against CDT and its fraud claims against both defendants should be dismissed with prejudice.

CONCLUSION

    For the foregoing reasons, defendants' motion for partial dismissal is GRANTED. Plaintiff's claims for breach of contract against defendant CDT and its claims for fraud against both defendants are hereby DISMISSED WITH PREJUDICE.

    IT IS SO ORDERED.

Dated: August 8, 2005

                                        MARILYN HALL PATEL
                                        District Judge
                                        United States District Court
                                        Northern District of California

**ENDNOTES**

1. All facts are drawn from plaintiff's first amended complaint and from the documents incorporated by reference therein.

2. The court also rejected defendants' argument that plaintiff was judicially estopped from denying the validity and enforceability of the novation agreement.

3. It should be noted that under California choice of law rules, the court need only reach the question of "governmental interest" if the substantive law of the foreign jurisdiction differs materially from California law. See Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000) (applying California choice of law rules). It is at least debatable that the scope of the United Kingdom's veil-piercing doctrine is broader than its California equivalent. Compare Palmers Company Law § 2.1519 ¶ 11 (2004) (observing that "[i]t has sometimes been argued that there is emerging in English and Scottish law a general principle that all companies in a group of companies will be treated as a single entity"), with American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996) (citations and original alterations omitted) (noting that under California law, a parent corporation will be held liable for the debts of its subsidiary under an alter-ego theory only if the plaintiff proves "(1) that there is such unity of interest and ownership that the separate personalities of [the parent and subsidiary corporations] no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice"). In any event, as the court finds that British law does not permit CDT's corporate veil to be pierced in the instant action, its conclusion would not change if California law supplied the rules of decision with respect to the alter-ego issue.

4. Plaintiff's amended complaint also characterizes CDT's conduct as tortious interference with contractual relations. Pl.'s Am. Compl. ¶ 11. However, because plaintiff has failed to plead that cause of action, the court need not consider whether it has stated a claim under that theory.