**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

                Plaintiff,

    v.

OPSYS LIMITED,

                Defendants,

_____/

No. C 05 0553 MHP

**MEMORANDUM & ORDER**
**Re: Defendant's Motion for Summary**
**Judgment or, in the alternative,**
**Summary Adjudication**

      Plaintiff Sunnyside Development Company, LLC ("plaintiff" or "Sunnyside") filed this breach of contract action against defendant Opsys Limited ("defendant" or "Opsys Ltd.") in the California Superior Court for the County of Alameda on December 14, 2004.  Defendant removed the action to this court on February 7, 2005.  Plaintiff asserts that defendant breached the terms of a commercial lease involving property in Fremont, California.  Defendant now moves for summary judgment on plaintiff's sole cause of action, or in the alternative, summary adjudication that Opsys Ltd. is no longer a party to the lease..  Having considered the parties' arguments and submissions, and for the reasons set forth below, the court enters the following memorandum and order.

BACKGROUND[1]

      Plaintiff Sunnyside Development Company, LLC is a Saratoga, California-based company doing business in California.  Sunnyside consists of two partners, Richard Eng ("Eng") and Chan Mae Ngan ("Ngan"), each of whom owns a 50% interest in the company.  JSUF ¶ 2.  Eng is

Sunnyside's managing partner. Id. Eng delegated the day-to-day operations of Sunnyside to Frank Chiu ("Chiu"), Sunnyside's property manager. Id. ¶¶ 2–3. Ngan has appointed Maureen Chan ("Chan") as her representative with respect to Sunnyside matters. Id. ¶ 2.

Defendant Opsys Ltd. is a United Kingdom company with its principal place of business in Oxford. Opsys Ltd. is currently wholly owned by Cambridge Display Technology, Inc. ("CDT"), a Delaware corporation with its principal place of business in Cambridgeshire.

Opsys Ltd. and Sunnyside entered into a Standard Industrial/Commercial Single-Tenant Lease and Addendum thereto ("Lease") dated February 15, 2001 for commercial property located in Fremont, California. JSUF ¶ 1. The Lease was signed by Eng for Sunnyside on March 1, 2001, and by Opsys Ltd.'s CEO and CFO on March 7, 2001. Id. ¶¶ 4 & 5. The lease term commenced on May 1, 2001. Id. ¶ 1. Opsys entered into the Lease intending to use the premises to house its pilot line manufacturing business, operated by its then-wholly-owned subsidiary Opsys US. Holmes Dec. ¶ 3; Holmes Dep. at 22:18–24, 26:8–15. Opsys US was incorporated in Delaware on March 12, 2001. Zervoglos Dep. at 34:5–21; Def's RJN, Exh. N.

By mid-2002, Opsys Ltd. was experiencing financial difficulties and began seeking investments. Zervoglos Dep. at 49:14–24, 131:1–6. In order to satisfy potential investors who were not interested in investing in Opsys US, Opsys Ltd. decided to "spin off" Opsys US as an independent company. Fyfe Dec. ¶ 3; Zervoglos Dep. at 26:19–27:11; Holmes Dep. at 35:10–36:2. As part of the spin-off, Opsys US engaged Kaufman Brothers, an investment bank, to help close a $40 million financing transaction. Zervoglos Dec. ¶ 2, Exh. A; Burns Dec, Exh. 16. Opsys Ltd. informed Chiu of this transaction. Rhea Dep. at 39:13–40:10; Burns Dec., Exh. 16.

Meanwhile, Opsys Ltd. was attempting to arrange an acquisition by CDT. CDT apparently would not complete the acquisition so long as Opsys Ltd. retained liabilities on the Lease. Fyfe Dec. ¶ 3; Reddy Dep. at 88:22–89:4; Zervoglos Dec., Exh. B. In July or August 2002, Opsys Ltd. discussed canceling the Lease with Chiu. JSUF ¶ 6. Chiu declined to cancel the Lease. Id. Opsys Ltd., Opsys US and Sunnyside subsequently negotiated an assignment of the Lease from Opsys Ltd. to Opsys US, whereby Opsys Ltd. would be released from liability. JSUF ¶ 7; Zervoglos Dec., Exh.

C.  Ultimately the three companies developed two key documents related to the assignment: an Assignment of Lease and Consent of Lessor ("Assignment"), and Amendment No. 2 to the Lease ("Amendment No. 2").  Burns Dec., Exhs. 9–15, 18–19; Rhea Dep. at 103:23–104:10, 102:1–9; Reddy Dep. at 48:14–15, 49:12–19; Zervoglos Dep. at 87:12–25, 89:2–23.

Under the terms of the Assignment, Sunnyside's consent to the Assignment was subject to four express conditions, as follows:

> Lessor hereby consents to this Assignment on the condition that not later than ninety (90) days after the date first written above:
>
> a.  Lessor and Assignee execute that certain proposed Amendment No. 2 to Lease [. . .];
>
> b.  Assignee deposits with Lessor the required letter of credit portion of the Security Deposit [. . .];
>
> c.  A pollution liability insurance policy . . . is procured by Lessee and delivered to Lessor;
>
> d.  Lessor's attorney fees incurred in connection with this Assignment in the amount of not greater than Ten Thousand Dollars ($10,000) are reimbursed by Assignee to Lessor [. . .]

Burns Dec., Exh. 11.  Opsys Ltd. asserts that all four conditions were satisfied.  Sunnyside acknowledges that the fourth condition, reimbursement of attorneys' fees, was met, but denies that the other conditions were met.  Opsys Ltd. asserts that, in reliance on the Assignment, CDT and Opsys Ltd. entered into a Transaction Agreement on October 23, 2002, by which CDT invested in Opsys UK, a subsidiary of Opsys Ltd.  Fyfe Dec. ¶ 4; Holmes Dec. ¶ 5; Def's RJN, Exh. R.

In addition to these conditions, the Assignment also contained a section setting forth "Representations of the Assignor," which included, in relevant part:

> b.  The Lease is in full force and effect according to the terms thereof;
>
> c.  Assignor has not previously assigned or transferred any of its rights, title or interest in, to or under the Lease and it holds such right, title and interest free and clear of any liens, claims or encumbrances;
>
> d.  As of the Effective Date, (I) Assignor is current in the payment of all rent and other amounts due under the Lease, including without limitation, amounts due in respect of taxes, utilities and insurance, and Assignor is not in default of any of its obligations there under, no has any event or condition occurred which, with notice of lapse of time,

3

> would mature into a default under the Lease; and, (ii) to its knowledge there are no claims, rights or actions that have accrued or could be asserted by Assignor against Lessor for any default, breach or violation by Lessor under the Lease.  Nothing contained herein shall be construed as a waiver by Lessor of any rights that it may have for any default, breach or violation of any term or provision of the Lease prior to the Effective Date by Assignor or Assignee of any of Lessor's obligations or representations under the Lease.

Burns Dec., Exh. 11.  Sunnyside claims that certain of these representations were false and therefore the Assignment was void.

Beginning in November 2002, Sunnyside sent a series of letters to Opsys Ltd. raising certain issues with respect to the Lease and purporting to suspend and/or terminate the assignment process. The first letter, dated November 8, 2002, addresses a mechanic's lien that had been recorded on the property and states that Sunnyside is "suspending the lease assignment process until the mechanic's lien problem is resolved to our satisfaction."  Pl's Exh. 106.  The second, dated December 16, 2002, concerns past-due rent payments, and states that "the existing Lessee is still Opsys Limited, the UK Company.  As of this day, the lease assignment is not yet in effect."  Pl's Exh. 107.  The third, dated December 20, 2002, again addressed Opsys Ltd.'s inability to pay rent, stated that $150,000 of the security deposit was being used to cover rent payments, and stated that "[a]s a result of the situation, which is unannounced and a major surprise to us, we are terminating all lease assignment activities." Pl's Exh. 108.  A fourth letter, dated January 10, 2003, states that Opsys is in violation of the Lease agreement for not making rental payments, and concludes with:

> Please also be reminded that the lease assignment is not in effect until the following conditions are met: (1) all rental payments are paid current, (2) the letter of credit is restored to $750,000, (3) the outstanding mechanic's lien is removed or satisfied, and (4) all other requirements in the lease assignment agreement are met.

Pl's Exh. 109.  Each letter is addressed to Opsys Ltd. at the Fremont facility.  The parties dispute the legal significance of these letters.

Kaufman and Opsys US were ultimately unsuccessful in closing the $40 million financing. JSUF ¶ 9.  On May 5, 2003, three of Opsys US's creditors filed an Involuntary Petition for Chapter 7 Bankruptcy against Opsys US in the United States Bankruptcy Court for the Northern District of

UNITED STATES DISTRICT COURT
For the Northern District of California

California.  JSUF ¶ 10.  Sunnyside was involved in the bankruptcy proceeding, identifying itself as the "landlord of the premises in which the Debtor is currently located," and submitting claims against the bankruptcy estate for, *inter alia*, unpaid rent and cleanup costs.  JSUF ¶ 12; Def's RJN, Exhs. C & J.  Sunnyside obtained $120,000 for cleanup costs from the bankruptcy estate through a settlement with the trustee.  JSUF ¶ 17.  Plaintiff also obtained relief from the automatic bankruptcy stay to proceed against Opsys US's pollution liability insurance policy.  Def's RJN, Exhs. K, L, M.  Sunnyside also withdrew the remaining $600,000 from Opsys Ltd.'s letter of credit in May 2003, after having drawn $150,000 in December 2002.  Burns Dec., Exhs. 25, 28–29; Zervoglos Dec., Exhs. D & E.

Sunnyside filed this action against defendant Opsys Ltd. in the California Superior Court for the County of Alameda on December 14, 2004.  Defendant removed the action to this court on February 7, 2005.  Defendant now moves for summary judgment or, in the alternative, summary adjudication.  In its reply brief, defendant states that "[t]he sole issue for the Court on this motion is whether the Assignment transferred the lease obligation from Opsys Ltd [sic] to Opsys US."  Rep. at 5.  The court will therefore focus exclusively on the prior conduct involving the parties to determine whether the Assignment effectively released Opsys Ltd. from its liabilities under the Lease.[2]

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party

1  will have the burden of proof at trial, the moving party need only point out "that there is an absence

2  of evidence to support the nonmoving party's case." Id. at 325.

3       Once the moving party meets its initial burden, the nonmoving party must go beyond the

4  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

5  genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving

6  party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959–60

7  (9th Cir. 1994). Nor is it sufficient for the opposing party simply to raise issues as to the credibility

8  of the moving party's evidence. National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97

9  (9th Cir. 1983). If the nonmoving party fails to show that there is a genuine issue for trial, "the

10  moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (quoting

11  Fed. R. Civ. P. 56(c).

12

13  DISCUSSION

14       Defendant raises four issues in its motion for summary judgment. Defendant's principal

15  contention is that Opsys Ltd. is no longer a party to the Lease based on the Assignment. In addition,

16  Defendant claims that plaintiff is estopped from denying the effectiveness of the Assignment and has

17  waived its right to do so. Finally, defendant asserts that plaintiff's conduct in the bankruptcy

18  proceeding bars any recovery in the instant action.

19       In response, plaintiff raises a host of issues. Plaintiff claims that the Assignment was not

20  effective because no consideration was paid, the conditions were not satisfied, and because Opsys

21  Ltd.'s misrepresentations rendered the Assignment void. Plaintiff further denies that it is barred by

22  estoppel, waiver, or the bankruptcy proceedings.

23

24  I.    Consideration

25       The parties do not dispute that the Assignment was designed as a novation that would release

26  Opsys Ltd. from its liabilities under the Lease and substitute Opsys US as the new tenant. A

27  novation, like any other contract, must be supported by consideration. Ybarra v. Solarz, 56 Cal.

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

App. 2d 342, 346 (1942).  Defendant asserts that consideration was provided to plaintiff in that the cash portion of the security deposit was reduced by $50,000, which amount was retained by plaintiff. Defendant claims that this $50,000 was consideration for the Assignment.[3]

In response, plaintiff claims that the $50,000 could not serve as consideration because plaintiff was entitled to retain that money as part of the security deposit based on Opsys Ltd.'s breach of the Lease.  Specifically, plaintiff claims that it was entitled to keep the $50,000 to clear a $55,0325.21 encumbrance and to cure Opsys Ltd.'s rental default.[4]

When questioned about the $50,000 reduction in the security deposit at his deposition in July 2006, Chiu testified that he considered the funds "a consideration . . . [f]or the re-leasing," thereby acknowledging that the Assignment provided for $50,000 in consideration for releasing Opsys Ltd. from the Lease.  Chiu Dep. at 197:21–198:18.  However, Chiu further testified that Sunnyside had never received the payment. Id. at 199:3–4.  As Chiu explained, he felt that plaintiff's retention of the $50,000 was part of its overall retention of the full security deposit due to Opsys Ltd.'s alleged breach of the Lease:

> Q.    You never kept the $50,000?
>
> A.    We still keep the deposit, the security deposit, at $300,000.
>
> Q.    What happened to it?
>
> A.    Still remain as a security deposit.
>
> Q.    It's on the books of Sunnyside as a security deposit?
>
> A.    In the amount of 300,000 dollar.

Id. at 199:5–12.

In further support of their contention that the $50,000 was paid as consideration, defendants have submitted an undated copy of Amendment No. 2 that is signed by Eng, containing the language "The parties hereto acknowledge that following the aforesaid assignment, the cash portion of the Security Deposit has been reduced to Two Hundred Fifty Thousand Dollars ($250,000)."  This signed copy does not appear to have been delivered to Opsys Ltd. as part of the assignment process. Based on Chiu's testimony, however, it is not clear whether the $50,000 was ever carved out and

7

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  retained by plaintiff in consideration for the Assignment, or whether (as Chiu suggests) plaintiff

2  simply kept the entire $300,000 under the terms of the original Lease.  Accordingly, a triable issue

3  of fact exists as to whether any consideration was paid for the Assignment.  Because the Assignment

4  would not have been effective without consideration, Opsys Ltd. is not entitled to summary

5  judgment or summary adjudication.

6

7  II.     Conditions

8          Under the terms of the contract, plaintiff's consent to the Assignment was expressly

9  conditioned upon four events: (1) Sunnyside and Opsys US executing Amendment No. 2, (2) Opsys

10  US delivering to Sunnyside an increased letter of credit, (3) Opsys Ltd. securing a pollution

11  insurance policy, and (4) Opsys Ltd. paying Sunnyside's attorneys' fees in connection with the

12  Assignment process.  If any of these conditions has not been satisfied, Sunnyside is not required to

13  honor the assignment of the Lease to Opsys US.[5]  Defendant claims that all four conditions of the

14  Assignment have been met.  Plaintiff acknowledges that the attorneys' fees condition was met, but

15  disputes that the remaining conditions were met.

16

17          A.     Amendment No. 2

18          The first condition of the Assignment is that "Lessor and Assignee execute that certain

19  proposed Amendment No. 2 to Lease . . . ."  Burns Dec., Exh. 11.  As noted above, Eng signed

20  Amendment No. 2 for Sunnyside.  However, defendant has not submitted a copy of Amendment No.

21  2 signed by an Opsys US representative.  Defendant nonetheless claims that Opsys US signed the

22  Amendment, but that the signed copy has been lost due to Opsys US's bankruptcy.

23          In support of its claim that Opsys US signed the Amendment, defendant cites testimony from

24  Gary Rhea, Opsys US's acting CFO, stating that he "[a]bsolutely" saw and received completed

25  copies of the Assignment and Amendment No. 2., and that he had the Assignment signed either by

26  Opsys US CEO Damoder Reddy or CFO Alexis Zervoglos, and gave a signed copy to Chiu.  Rhea

27  Dep. at 103:4–104:14, 108:14–17.  Reddy also testified that he "signed whatever papers were

28

8

**UNITED STATES DISTRICT COURT**
For the Northern District of California

brought for [him] to sign" related to the Assignment, but could not recall specifically signing Amendment No. 2.  Reddy Dep. at 48:10–49:19.  Finally, defendant cites an email dated December 18, 2002 from Rhea to Zervoglos which states that they were "done with the documents assigning the lease."  Defendant has not cited the actual email, but rather points to deposition testimony from various Opsys US personnel discussing the communications that occurred during this time.  Defendant points to no testimony from Chiu or other Sunnyside personnel acknowledging receipt of an Opsys US signature, and Chiu denies that he ever delivered Eng's signature.  Rather, Chiu claims that he kept the signed copy for safe keeping with the intent to deliver it if and when the remaining conditions were satisfied.[6]  Chiu Dec. ¶ 19.  Chiu also claims that he was told on two separate occasions that Reddy had not signed Amendment No. 2.  Id. ¶¶ 30–31.[7]

While it is understandable that a document such as the signed copy of Amendment No. 2 would have been lost during the Opsys US bankruptcy proceeding, Opsys Ltd.'s explanation for its unavailability does not eliminate the factual question surrounding its existence or whether it was ever delivered to plaintiff.  This is particularly true in light of the deposition testimony and declarations claiming that no such copy was ever delivered.  Accordingly, a triable issue of fact exists as to whether the first condition was met.

    B.    Letter of Credit

The Assignment's second condition is that "Assignee deposits with Lessor the required letter of credit portion of the Security Deposit as described more fully in Paragraph 1(c) of said Amendment No. 2."  Burns Dec., Exh. 11.  Paragraph 1(c) of Amendment No. 2 provides: "The parties hereto agree that Paragraph 50 of the Lease is amended to provide that the letter of credit portion of the Security Deposit shall be increased to Seven Hundred Fifty Thousand Dollars ($750,000) from and after the effective date of this Amendment No. 2 to Lease."  Burns Dec., Exh. 12.

Plaintiff does not deny that Opsys Ltd.'s original $600,000 letter of credit was increased by $150,000.  Opp. at 19:10–18.  However, plaintiff claims that this increase did not satisfy the

9

condition because the Assignment required an entirely new letter of credit from Opsys US, not Opsys Ltd. According to plaintiff, "Opsys Limited's letter of credit was expiring in four months and Sunnyside bargained for additional security *from Opsys US* and that is not what it received." Opp. at 19:18–20 (emphasis in original). Plaintiff further claims that, even if the letter of credit from Opsys Ltd. satisfied the terms of the contract, the letter was not in place on the alleged effective date of the Assignment because as of December 20, 2002 the letter was drawn down by $150,000 to pay defaulted rent and other expenses. Plaintiff's letter dated January 10, 2003 reflected this belief and advised Opsys Ltd. of plaintiff's position. Pl's Exh. 109.

On this record, a jury could conclude that the full letter of credit was not in place in satisfaction of the Assignment condition because plaintiff was forced to draw down the letter before the Assignment became effective. Accordingly, a triable issue exists as to whether this condition was satisfied.

### C.   Pollution Insurance Policy

The final disputed condition is that "A pollution liability insurance policy . . . is procured by Lessee and delivered to Lessor." Burns Dec., Exh. 11. Plaintiff asserts that the original insurance policy, obtained in October 2002, failed to satisfy the terms of the Assignment, and that plaintiff alerted defendant to this fact on November 1, 2002. Pl's Exh. 117. Plaintiff further asserts that, although Opsys received endorsements to change some of the defects on January 2, 2003, the Assignment had already been rescinded by then. Burns Dec., Exh. 27.

As with the other conditions, the court finds that a triable issue exists as to whether plaintiff rescinded the Assignment before the insurance policy condition was satisfied.

### D.   Summary

In sum, Sunnyside has demonstrated that material issues of fact exist as to three of the four conditions regarding Sunnyside's consent to the Assignment. Accordingly, defendant is not entitled to summary judgment or summary adjudication.

10

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2 III.    Representations

3          Under California law, "a contract may be rescinded by a contracting party unilaterally if his

4 consent to be bound by the agreement was induced either by a material misrepresentation, though

5 innocently made, or a mistake."  Wood v. Kalbaugh, 39 Cal. App. 3d 926, 929 (1974).  An injured

6 party waives its right to rescind by accepting the benefits of the contract.  Gill v. Rich, 128 Cal. App.

7 4th 1254, 1264 (2005).

8          Plaintiff alleges that certain of the "Representations of the Assignor" delineated in the

9 Assignment were false, rendering the Assignment voidable.  Specifically, plaintiff claims that (1)

10 undisclosed mechanic's liens had been recorded on the property prior to the Assignment, (2) Opsys

11 Ltd. had transferred its assets to Opsys UK prior to the Assignment, (3) Opsys Ltd. was unable to

12 pay rent, and (4) hazardous materials were being stored on the premises without funds or a plan for

13 removal.  Plaintiff further claims that it effectively rescinded the Assignment based on these

14 misrepresentations via letters dated from November 2002 through January 2003.

15          As a preliminary matter, defendant asserts that plaintiff is precluded from asserting

16 defendant's alleged misrepresentations because plaintiff's fraud cause of action has been dismissed

17 with prejudice.  See Sunnyside Development Co., LLC v. Opsys Ltd., No. C 05-0553 MHP, 2005

18 WL 1876196, at *6 (N.D. Cal. Aug. 8, 2005) (Patel, J.).  In advancing this argument, defendant

19 misinterprets plaintiff's theory regarding Opsys Ltd.'s alleged misrepresentations.  Plaintiff's

20 misrepresentation argument is not meant to form the basis of an independent cause of action, but

21 rather to demonstrate that the express representations in the Assignment were untrue, rendering the

22 Assignment voidable.  Accordingly, plaintiff's argument in this regard is proper.

23          In addition to attacking the propriety of plaintiff's misrepresentation claims, defendant denies

24 that any misrepresentations were made.  Furthermore, defendant asserts that any misrepresentations

25 would have rendered the Assignment *voidable*, not *void*, and that plaintiff waived its right to void

26 the Assignment by accepting and retaining the benefits of the Assignment agreement.

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Plaintiff has identified a series letters which it claims indicate that plaintiff voided the

2   Assignment.[8]  Although plaintiff identifies four alleged misrepresentations, the letters that purport to

3   rescind the Assignment discuss only the mechanic's liens and the delinquent rental payments.  Pl's

4   Exhs. 106–109.  Accordingly, plaintiff's assertion that it has previously rescinded the Assignment

5   may be supported only by misrepresentations related to the mechanic's lien or the rental payments.

6   The court therefore does not reach the parties' arguments related to the CDT transaction or

7   hazardous materials.[9]

8    According to plaintiff, Chiu received a copy of a mechanics lien recorded by Consolidated

9   Electrical dba Royal Wholesale Electrical during the first week of November 2002, after Sunnyside

10  had signed the Assignment.  Chiu Dec. ¶¶ 16–17.  Chiu spoke to Opsys US Controller Steve Lund

11  about the lien, and Lund told Chiu that the lien was being settled and would be removed

12  immediately.  Id. ¶ 17.  Plaintiff further claims that three additional liens were recorded on the

13  property in December 2002.  Id. ¶ 25.  Sunnyside sent Opsys Ltd. a letter dated December 17, 2002,

14  demanding a bond pursuant to the Lease agreement and stating that failure to resolve the liens would

15  result in a breach of the Lease.  Pl's Exh. 118.  Plaintiff claims that these liens were removed in

16  2003 by plaintiff.

17   In response, defendant claims that the mechanic's lien was not a breach of the Lease, but

18  rather the Lease would be breached only if Opsys Ltd. refused to post a bond to cover the lien as

19  provided for in the Lease.  Burns Dec., Exh. 7.  While this is a correct interpretation of the *Lease*,

20  plaintiff's argument is grounded in the *Assignment*.  The Assignment includes the following express

21  representation by the Assignor (Opsys Ltd.):  "Assignor has not previously assigned or transferred

22  any of its rights, title or interest in, to or under the Lease and it holds such right, title and interest

23  free and clear of any liens, claims or encumbrances."  Burns Dec., Exh. 11.  Accordingly, the

24  existence of the lien was grounds for rescission of the Assignment.[10]

25   Furthermore, there is at least a genuine issue of fact with respect to whether the three liens

26  recorded in December supported rescission of the contract.  Although defendant argues that these

27  liens were recorded after the "effective date" of the assignment, the question of whether the

28

UNITED STATES DISTRICT COURT
For the Northern District of California

12

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Assignment ever became "effective" is in serious dispute, and during this time period plaintiff was

2  clearly behaving as though the Assignment had not yet taken effect.  See Pl's Exh. 109 (letter from

3  Sunnyside to defendant stating that "the lease assignment is not in effect until . . . the outstanding

4  mechanic's lien is removed or satisfied").  A material issue of fact therefore exists as to whether

5  plaintiff effectively rescinded the Assignment based on the latter three mechanic's liens.

6         In addition to the mechanic's lien, the Assignment contained a representation that "Assignor

7  is current in the payment of all rent and other amounts due under the Lease."  Burns Dec., Exh. 11.

8  Plaintiff raised the issue of delinquent rent payments by letters throughout December 2002 and

9  January 2003.  Accordingly, a genuine issue of fact exists as to whether the Assignment was

10  properly rescinded by plaintiff for Opsys' failure to pay rent.

11         In sum, plaintiff has raised several triable issues of fact as to whether the representations in

12  the Assignment were true, and has submitted sufficient evidence from which a jury could conclude

13  that plaintiff effectively rescinded the Assignment.

14

15  IV.    Estoppel and Waiver

16         Defendant asserts that plaintiff is estopped from denying that the Assignment was effective

17  based on its course of conduct following the alleged Assignment.  The elements of equitable

18  estoppel are:

19         (1) the party to be estopped must be apprised of the facts; (2) he must
           intend that his conduct shall be acted upon, or must so act that the
20         party asserting the estoppel has a right to believe it was so intended;
           (3) the other party must be ignorant of the true state of facts; and (4)
21         he must rely upon the conduct to his injury.

22  City of Goleta v. Superior Court, 40 Cal. 4th 270, 120 (2006).  Defendant claims that plaintiff is

23  estopped because it kept the consideration arising from the Assignment and Amendment No. 2,

24  including drawing the full amount of the $750,000 letter of credit and receiving the insurance policy

25  and attorneys' fees, thereby accepting performance without apprising Opsys Ltd. of the fact that

26  Amendment No. 2 was not signed.  Defendant cites the alleged communications between Rhea and

27  Zervoglos regarding the completion of the assignment paperwork in support of its own ignorance of

28

13

1   the fact that the Assignment was not effective.  Defendant further asserts that it relied on its belief

2   that the Assignment was effective by proceeding with the CDT financing, which had been

3   contingent upon Opsys Ltd.'s release of liability under the Lease.

4          As discussed above, the letters Sunnyside sent to Opsys Ltd. care of Opsys US in late 2002

5   and early 2003 create a triable issue as to whether Sunnyside rescinded the Assignment before it

6   became effective.  Although defendant claims that these letters were insufficient because they were

7   sent to Opsys US rather than Opsys Ltd. in the UK, the court finds that this formality does not render

8   the letters ineffective as a matter of law.  Furthermore, the fact that Sunnyside addressed the letters

9   to Opsys Ltd. care of Opsys US suggests that Sunnyside intended to apprise Opsys Ltd. of the facts,

10  which undercuts defendant's claim that Sunnyside intended to induce reliance.  Accordingly,

11  defendant has not shown as a matter of law that Sunnyside is estopped from denying the

12  effectiveness of the Assignment.

13         Similarly, defendant asserts that plaintiff has waived any objections to the Assignment by

14  accepting all of the benefits of the Assignment.  A waiver of a legal right may be implied or express,

15  and acceptance of the benefits of the contract after breach, with full knowledge of the facts, amounts

16  to waiver of a cause of action for breach.  See Prairie Oil Co. v. Carleton, 91 Cal. App. 2d 555, 559

17  (1949).  Plaintiff denies that it retained any benefits to which it was not independently entitled.

18  Specifically, plaintiff claims that it was entitled to attorney fees under the original Lease, regardless

19  of whether the Assignment took effect.  See Pl's Exh. 101 ¶ 24 ("Lessor's actual reasonable costs

20  and expenses (including . . . attorneys' . . . fees) incurred in the consideration of, or response to, a

21  request by Lessee for any Lessor consent, including . . . consents to an assignment . . . shall be paid

22  by Lessee upon receipt of an invoice and supporting documentation therefore.").  The attorney fee

23  condition in the Assignment was therefore a pre-existing duty and could not serve as consideration

24  for the Assignment.  See Restatement (Second) of Contracts § 73.

25         Regarding the letter of credit, it is undisputed that the letter of credit was increased as

26  required by the Assignment, and that the entire letter of credit was drawn down by Opsys Ltd. and

27  Sunnyside in order to cure defaults in rents and taxes.  Plaintiff claims that it was entitled to this

28

14

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   benefit due to Opsys Ltd.'s failure to pay rent.  As discussed above, plaintiff's January 10, 2003

2   letter sets forth their position that the increased letter of credit was insufficient to satisfy the

3   requirements of the Assignment because plaintiff was forced to draw down $150,000 before the

4   Assignment process was complete. Pl's Exh. 109.

5           Finally, with respect to the insurance policy, plaintiff claims that it has yet to receive any

6   benefit from the policy, and that the policy—like the attorneys' fees—was required by the Lease.

7   Plaintiff points to no provision in the Lease that would require the insurance policy identified in the

8   Assignment.  However, there is a genuine issue of fact regarding whether plaintiff terminated the

9   Assignment before receiving the insurance policy.  In any case, it does not appear that plaintiff has

10  received any funds from the insurance policy and it is therefore not clear that the policy can be

11  characterized as a benefit that plaintiff has received.

12          Furthermore, the so-called "benefits" which plaintiff is alleged to have retained were

13  conditions, not consideration.  Notably, apart from the formality of executing Amendment No. 2,

14  each of the three conditions was geared to ensuring that Opsys Ltd./Opsys US would be able to

15  satisfy its obligations under the Lease.  The increased letter of credit, the insurance policy, and the

16  pre-existing duty to pay plaintiff's attorney fees all related to responsibilities on the part of Opsys

17  Ltd.  They were not independent benefits of the Assignment contract.  Accordingly, to the extent

18  that plaintiff actually received and retained any of these concessions—which remains in

19  dispute—they could not form the basis of waiver.

20          In sum, defendant has not shown that plaintiff waived its right to challenge the validity of the

21  Assignment.  Plaintiff clearly at least attempted to advise Opsys Ltd. that it was rescinding the

22  Assignment in late 2002 and early 2003.  The only purported "benefit" of the contract that plaintiff

23  clearly obtained was the increase in the letter of credit, which was drawn down to satisfy Opsys

24  Ltd.'s defaults before the Assignment became effective.  The court therefore finds that plaintiff has

25  not waived its right to challenge the validity of the Assignment.

26

27

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

V.      The Bankruptcy Proceedings

Defendant asserts that plaintiff is judicially estopped from holding Opsys Ltd. liable under the Lease based on its conduct in the Opsys US bankruptcy proceeding.  Defendant further claims that the Lease was terminated in the bankruptcy proceeding, and therefore cannot form the basis of the instant action against Opsys Ltd.

A.      Judicial Estoppel

"[F]ederal law governs the application of judicial estoppel in federal court." Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 603 (9th Cir. 1996).  Under the doctrine of judicial estoppel, where

> "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895)).  Although judicial estoppel is an equitable doctrine that is not easily defined, the United States Supreme Court has identified three factors that are relevant to the application of the doctrine. Id. at 750.  First, a party's position in the second matter must be "clearly inconsistent" with its position in the first matter.  Id.  Second, a court must have accepted the party's earlier position.  Id. at 750–751.  The third consideration is whether the party asserting an inconsistent position "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 751.

According to defendant, plaintiff took positions during the Opsys US bankruptcy proceeding which are inconsistent with its current claims regarding the validity of the Assignment.  Specifically, plaintiff allegedly took the positions that (1) the pollution liability insurance policy was obtained and covered plaintiff, (2) plaintiff was entitled to a claim for rent from the estate, and (3) the Assignment was effective and Opsys US was a party to the Lease, such that plaintiff had a right to recover on the insurance policy.  Plaintiff ultimately reached a settlement with the bankruptcy estate that was

16

UNITED STATES DISTRICT COURT
For the Northern District of California

1   approved by the bankruptcy court.  Def's RJN, Exh. H.  Many of the details giving rise to this

2   settlement, including the trustee's reasons for determining that plaintiff had a claim against the

3   estate, are privileged.  See Kendall Dep. at 40:14–41:10.  However, defendant claims that the

4   available evidence leads to the conclusion that the bankruptcy trustee determined that the

5   Assignment was effective, or that plaintiff had convinced the trustee that the Assignment was

6   effective.

7            In support of its claim that Sunnyside took an inconsistent position in the bankruptcy

8   proceedings, defendant refers to an email exchange between the attorneys for the trustee and the

9   attorneys for plaintiff dated in September 2003.  Burns Dec., Exh. 37.  In this exchange, the trustee's

10  attorney stated that "One concern that we have is the fact that we have not seen a lease between

11  Sunnyside and the debtor [Opsys US].  The only lease that we have seen is between Opsys Ltd and

12  Sunnyside.  Can you provide us with documentation in this regard?"  Id.  Defendant has provided no

13  follow-up communications regarding this request for documentation, but claims that because the

14  trustee later concluded that Sunnyside had a claim against Opsys US, he must have relied upon the

15  Assignment at issue in this action.

16           Turning to the filings in the bankruptcy proceedings, defendant has submitted an illegible

17  copy of a filing by the trustee which defendant claims states that "[t]he Debtor [Opsys US] occupied

18  the premises pursuant to a written lease and assignment agreement."  Def's RJN, Exh. G.  When

19  questioned about this statement during his deposition, the trustee stated that "[t]he facts are correct."

20  Kendall Dep. at 98:9–19.

21           As for Sunnyside's own filings, Sunnyside's proof of claim against Opsys US attaches only

22  the original Lease, not the Assignment, and seeks, inter alia, unpaid rent for December 2002 through

23  April 2003 and funds to discharge the three mechanic's liens.  Def's RJN, Exh. J.  The bankruptcy

24  settlement agreement itself, meanwhile, states that "Opsys [US] occupied and operated on the

25  premises . . . which Premises is owned by Sunnyside, pursuant to a written lease with Opsys

26  Limited, a United Kingdom Company (the "Lease")."  Def's RJN, Exh. H.  The settlement

27  agreement does not mention the Assignment or any other contracts involving Sunnyside, Opsys Ltd.,

28

17

1   or Opsys US.  Id.  The settlement agreement provides that the estate will pay funds related to

2   environmental remediation and cleanup rather than rental payments or mechanic's lien funds.  Id.

3          On these facts, the court does not find that plaintiff is judicially estopped from pursuing its

4   claim against Opsys Ltd.  Opsys Ltd. has pointed to no claims or representations *by Sunnyside* in the

5   bankruptcy proceedings that are "clearly inconsistent" with its position in the instant action.  In

6   addition, it is not at all clear what led to the trustee's conclusion that Sunnyside had a claim against

7   the estate, or which legal theory he relied on to determine the estate's possible exposure to

8   Sunnyside.[11]  Furthermore, the settlement agreement approved by the bankruptcy court (i.e., the

9   document setting forth what the bankruptcy court adopted) contains no reference to the Assignment,

10  and Sunnyside's initial proof of claim is based on the Lease only.  Finally, the fact that the trustee

11  agreed to—and the bankruptcy court approved—a settlement payment related to environmental

12  remediation may have been based on the fact that Opsys US, as the occupier of the premises during

13  the period in question, was the party that actually created the environmental hazard, and therefore

14  may have been liable for the damage regardless of any contractual obligation.  The fact is that the

15  trustee's motivations for settling with Sunnyside are indeterminate on the present record, and

16  defendant has therefore failed to establish that Sunnyside is judicially estopped from proceeding

17  with its present cause of action.

18

19          B.      Lease Termination

20          Finally, defendant asserts that the Lease was rejected in bankruptcy court by operation of

21  law, and that this is equivalent to termination of the Lease by breach.  See 4 Collier on Bankruptcy ¶

22  502.03[7][b] (15th ed. rev.).  When a lease is rejected in bankruptcy, the "lessor is entitled to assert a

23  general unsecured claim for damages," which is limited by 11 U.S.C. section 502.  In re

24  McSheridan, 184 B.R. 91, 96 (9th Cir. 1995).  Defendant appears to be arguing that, by virtue of the

25  estate's rejection of the lease, plaintiff's damages under the lease are statutorily capped at one year's

26  rent.

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

Defendant cites no authority indicating that the trustee's termination of the lease had any effect on Opsys Ltd.'s obligations under the lease. Although unable to provide a legal conclusion, the trustee testified to his belief that the rejection had no effect on other parties to the lease. Kendall Dep. at 167:2–169:2. Rather, the correct interpretation of the law is that the rejection of the lease is tantamount to a breach of the lease *by Opsys US*, and thus any damages arising from that breach that plaintiff may collect from Opsys US are limited by the Bankruptcy Code. Furthermore, the language of rejection in the settlement agreement is conditional: "any such Lease, if in effect in this Estate, has been rejected by the Trustee as a matter of law." Def's RJN, Exh. H. The trustee's intent in including this provision was to discharge Opsys US's responsibilities under the lease, to the extent they existed. Such a rejection would only have been necessary if the Assignment had taken effect and substituted Opsys US as the new lessee. As the effectiveness of the Assignment is in dispute, the trustee's rejection of the lease in and of itself has no effect on plaintiff's ability to recover from Opsys Ltd.

CONCLUSION

For the reasons stated above, the court DENIES defendant's motion for summary judgment or, in the alternative, summary adjudication.

IT IS SO ORDERED.

Dated:     February 6, 2007

_____
MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

19

**ENDNOTES**

1.  Unless otherwise noted, the background facts are drawn from the parties' Joint Statement of Undisputed Facts ("JSUF"), the parties' declarations, and the parties' Requests for Judicial Notice ("RJN").

2.  The court therefore does not reach Sunnyside's argument that Opsys Ltd. breached the covenant of good faith and fair dealing, as this issue is irrelevant to the instant motion.

3.  Defendant further claims that the mutual release of obligations under the Lease was consideration for the novation, citing <u>People ex rel. Dep't of Pub. Works v. Metcalf</u>, 79 Cal. App. 3d 1, 9 (1978) (holding that "the required consideration [for a novation] is present when the original contract is partially executory on both sides, since both parties suffer a legal detriment through the mutual cancellation of executory contractual rights"). However, this mutual release was clearly not the consideration that plaintiff bargained for, as indicated by Chiu's initial refusal to release Opsys Ltd. from the Lease.

4.  Plaintiff further claims that the consideration was never "paid" because the Assignment provided that the consideration was to be paid "on the effective date." As discussed below, plaintiff claims the Assignment never became effective and therefore there was no effective date. Accordingly, plaintiff claims that the $50,000 could not have been paid "on the effective date" and therefore could not serve as consideration for the Assignment. This argument lacks merit. The consideration was the $50,000, not receiving the $50,000 on a particular date. Plaintiff's attempt to transform a contractual formality into a substantive portion of the contract's consideration is unavailing.

5.  The express conditions in the Assignment are conditions precedent to plaintiff's performance (i.e., consenting to the Assignment), not to the formation of the contract. <u>See</u> <u>Dupont v. Avalon Hollywood Services, Inc.</u>, No. B189596, 2007 WL 93386, at *3 (Cal. App. Jan. 16, 2007). Thus, although the contract would have formed absent the conditions, plaintiff would nonetheless be able to hold Opsys Ltd. to the original Lease if the conditions have not been met.

6.  The signed copy of Amendment No. 2 submitted as evidence was obtained by Opsys Ltd. via discovery in this litigation.

7.  Defendant further claims that, if the condition of executing Amendment No. 2 was not met, it was excused because plaintiff prevented the condition from being met by failing to deliver its own executed copy. As discussed below, there is a triable issue of fact as to whether circumstances existed justifying plaintiff's refusal to execute the Amendment. Furthermore, there is a triable issue as to whether Opsys US signed Amendment No. 2, something over which plaintiff had no control.

8.  The relevant contents of each letter are set forth in the Background section, *supra*.

9.  Likewise, plaintiff's argument related to California Civil Code section 1533 is inapplicable to the prior conduct at issue in this motion. Section 1533 provides that a novation may be rescinded "if, at the time the obligation or order is received, such person is insolvent, and this fact is unknown to the

20

creditor, or if, before the creditor can with reasonable diligence present the order to the person upon whom it is given, he becomes insolvent." Although plaintiff alleges that the Assignment was void due to the insolvency of Opsys US, plaintiff presents no evidence that it has previously asserted this insolvency in order to rescind the Assignment.

10. Defendant claims that plaintiff is required to show reliance on the alleged misrepresentations, citing cases which impose a reliance requirement for suits for breach of an express warranty in a contract. Here, however, plaintiff is claiming that the contract was void or voidable, not breached. Accordingly, plaintiff was entitled to rescind the Assignment if any of the representations in the Assignment were materially false.

11. The trustee testified that he believed Sunnyside was Opsys US's landlord. Kendall Dep. at 42:20–24. However, the trustee also testified that he did not recall seeing any documents indicating that Sunnyside took the position that Opsys US was the lessee, nor did he recall anyone telling him that Sunnyside was taking that position. Id. at 171:8–19. The trustee went on to testify that it is not unusual for a sublandlord to file a proof of claim to collect rent from a subtenant. Id. at 171:20–23. In sum, there were a variety of legal theories and possible legal conclusions that could have motivated the trustee to settle with Sunnyside. The trustee need not have necessarily relied upon the Assignment.

21