UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SUNNYSIDE DEVELOPMENT COMPANY, LLC,

        Plaintiff,

  v.

OPSYS LIMITED,

        Defendants,

No. C 05 0553 MHP

**MEMORANDUM & ORDER**
Re: Plaintiff's Motion for Attorneys' Fees and Costs

      Plaintiff Sunnyside Development Company, LLC ("plaintiff" or "Sunnyside") filed this breach of contract action against defendant Opsys Limited ("defendant" or "Opsys Ltd.") in the California Superior Court for the County of Alameda on December 14, 2004. Defendant removed the action to this court on February 7, 2005. The matter proceeded to jury trial on February 21, 2007. On March 9, 2007 the jury returned a verdict in favor of plaintiff. Plaintiff now moves for an award of attorneys' fees and costs in the amount of $936,534.83. Having considered the parties' arguments and submissions, and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

      The factual background of this action is set forth in this court's order on defendant's motion for summary judgment. Sunnyside Dev. Co. v. Opsys Ltd., No. C 05 0553 MHP, 2007 WL 419865

(N.D. Cal. Feb. 6, 2007) (Patel, J.). The background related to the attorneys' fee dispute is set forth below.

The lease upon which plaintiff brought action ("Lease") contained an attorneys' fee clause which provided, in relevant part:

> If any Party or Broker brings an action or proceeding involving the Premises to enforce the terms hereof or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorney's fees. . . . The term, "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorney's fees award shall not be computed in accordance with any court's fee schedule, but shall be such as to fully reimburse all attorney's fees reasonably incurred. In addition, Lessor shall be entitled to attorney's fees, costs and expenses incurred in the preparation and services of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach.

Huber Dec., Exh. 1 ¶ 31. The Assignment agreement which formed the basis for defendant's affirmative defense ("Assignment") also contained an attorneys' fee provision: "In the event an action is initiated to interpret or enforce any of the terms of this Assignment or enforce any judgment, the prevailing party shall be entitled to receive from the other party reasonable attorney's fees, costs, and expenses incurred in the action." Huber Dec., Exh. 2 ¶ 8(f). Having received a verdict in its favor, plaintiff now seeks an award of attorneys' fees and costs pursuant to these contractual provisions.

LEGAL STANDARD

Because this case is based on diversity jurisdiction, the court will apply California state law regarding attorneys' fees. Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1236 (9th Cir. 2001). "Unless authorized by either statute or agreement, attorney's fees ordinarily are not recoverable" in California. Reynolds Metals Co. v. Alperson, 25 Cal. 3d 124, 127 (1979). Where a contract does provide for attorneys' fees, these contractual provisions are governed by California Civil Code section 1717, which provides in relevant part:

2

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Application of this provision is subject to the "ordinary rules of contract interpretation," which is governed by "the mutual intention of the parties at the time the contract is formed . . . ." Exxess Electronixx v. Heger Realty Corp., 64 Cal. App. 4th 698, 709 (1998) (internal quotations omitted). "Such intent is to be inferred, if possible, solely from the written provisions of the contract . . . ." Id. (internal quotations omitted). "Where a party is entitled by statute or contract to attorney's fees, the amount awarded is within the discretion of the trial court." Nevin v. Salk, 45 Cal. App. 3d 331, 339 (1975).

DISCUSSION

I.   Applicability of Attorneys' Fees Provisions

Defendant claims that plaintiff is not entitled to attorneys' fees under the Lease or the Assignment.[1] The court will consider each provision in turn.

A.   Lease

Notwithstanding the clear language of the lease providing for attorneys' fees, defendant claims that the provision is inapplicable to this litigation. Specifically, defendant claims that plaintiff's breach of contract action was not an action brought "to enforce the terms hereof or to declare rights hereunder" as provided for in the contract. Rather, defendant asserts that plaintiff's action claimed that the lease was terminated, and sought statutory damages. In support of this distinction, defendant cites the last sentence of the attorneys' fee provision, which states: "In addition, Lessor shall be entitled to attorney's fees, costs and expenses incurred in the preparation and services of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach." Because

3

the terms "Default" and "Breach" do not appear elsewhere in the provision, plaintiff asserts that an action alleging default or breach does not constitute an action to enforce the terms of the contract or to declare rights thereunder.

Defendant's interpretation of the contract is overly strained. The statutory damages sought by plaintiff are explicitly tied to its rights under the contract. See Cal. Civ. Code § 1951.2. Accordingly, an action seeking these damages is clearly an action to enforce contractual rights. Furthermore, defendant's parsing of the final sentence is unpersuasive. The purpose of the final sentence is to provide for *additional* attorneys' fees and costs in the event of default or breach for work not directly connected to a legal proceeding. Reading this additional cost provision as an exclusion of attorneys' fees for actions for breach of contract would be manifestly unreasonable.

Plaintiff is correct, however, that the provision does not provide for an award of litigation costs. Rather, the lease provision only allows recovery of "reasonable attorney's fees" incurred in a legal action or proceedings.

### B. Assignment

Plaintiff asserts that it is entitled to enforce the attorneys' fee provision of the Assignment notwithstanding the jury's finding that the Assignment was never effective. In support of this claim, plaintiff asserts that the Assignment was raised as an affirmative defense by defendant, and that because plaintiff was the prevailing party with respect to that defense, it is entitled to attorneys' fees. Plaintiff is correct that a party which defeats a contract claim is entitled to a recovery of fees where the contract at issue provides for attorneys' fees. This principle derives from the reciprocity of section 1717. If Opsys Limited had brought an action to enforce the Assignment against Sunnyside and prevailed, Opsys Limited would have been entitled to attorneys' fees under the terms of the Assignment. Accordingly, Sunnyside must receive the same benefit as the prevailing party despite the fact that the contract is ultimately found to be unenforceable. See Reynolds Metals, 25 Cal. 3d at 128.

4

However, a different rule applies where a contract forms the basis of an affirmative defense rather than a cause of action. The California Court of Appeal has squarely held that the language "brings an action to enforce the contract," which is functionally identical to the operative language at issue here, is "quite narrow," and does not include situations where the contract is asserted as a defense. Gil v. Mansano, 121 Cal. App. 4th 739, 744 (2004). In Gil, the court held that "the assertion of a defense does not constitute the bringing of an action" to enforce a contract, notwithstanding the fact that "a defense to [an action] based on a provision of the contract may have the effect of enforcing the provisions of the contract." Id. at 743.

Because the Assignment was raised as an affirmative defense, no action was brought to enforce its terms. Accordingly, the attorneys' fee provision of the Assignment is inapplicable. However, this does not mean that plaintiff is not entitled to attorneys' fees incurred in litigating the Assignment. "California law is settled that an obligation to pay attorney fees incurred in the enforcement of a contract 'includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation.'" Siligo v. Castellucci, 21 Cal. App. 4th 873, 878 (1994) (quoting Finalco, Inc. v. Roosevelt, 235 Cal. App. 3d 1301, 1308 (1991)). Accordingly, attorneys' fees incurred in litigating the Assignment are available through the attorneys' fees provision in the lease. The effect of the inapplicability of the Assignment provision, therefore, is that plaintiffs are unable to recover an award of costs and expenses. Plaintiffs are entitled to attorneys' fees only.

## II. Apportionment

Plaintiffs are undisputably the prevailing party in this action, and are therefore entitled to be "fully reimburse[d]" for attorneys' fees covered by the Lease provision. Because this action involved other claims, however, the court must determine the proper amount of attorneys' fees.

### A. Applicable Law

California courts apply section 1717 narrowly, particularly where the contractual provision is itself narrow. First, "section 1717 does not apply to tort claims; it determines which party, if any, is

5

entitled to attorneys' fees on a *contract claim only*." Exxess Electronixx, 64 Cal. App. 4th at 708 (emphasis in original). Actions for fraud do not constitute actions to "enforce the terms" of a contract or "declare rights" under the contract. Id. at 708–09. "[T]ort claims are premised on a duty . . . that was not created by the lease," but rather a "general duty to society which the law imposes without regard to the substance of the contractual obligation." Id. at 711 (internal quotations omitted). See also Gil, 121 Cal. App. 4th at 743 (holding that "[a] tort claim does not enforce a contract"). Likewise, provisions for the recovery of contractual attorneys' fees do not cover equitable claims to determine the "distribution of loss among multiple tortfeasors . . . ." Exxess Electronixx, 64 Cal. App. 4th at 714 (internal quotations omitted). Finally, each contract claim must be treated separately for the purposes of determining entitlement to contractual attorneys' fees. Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co., 47 Cal. App. 4th 464, 490–91 (1996).

"'Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action.'" Id. (quoting Reynolds Metals, 25 Cal. 3d at 129). Recovery of attorneys' fees for work related to multiple claims is appropriate where claims are "inextricably intertwined, making it impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units." Id. at 1085 (internal quotations and citations omitted). With these principles in mind, "[a]pportionment of a fee award between fees incurred on a contract cause of action and those incurred on other causes of action is within the trial court's discretion . . . ." Erickson v. R.E.M. Concepts, Inc., 126 Cal. App. 4th 1073, 1083 (2005).

As a matter of legal formality, therefore, plaintiff is only entitled to attorneys' fees for its breach of contract action against Opsys Limited. Plaintiff is not entitled to attorneys' fees related to its fraud claims against CDT Limited or Opsys Limited, which were separate tort claims. Plaintiff's breach of contract claim against CDT Limited was separate from its breach of contract claim against Opsys Limited, and was resolved in favor of CDT Limited. Accordingly, plaintiff is not entitled to attorneys' fees for its breach of contract claim against CDT Limited. Finally, plaintiff is not entitled

6

to its attorneys' fees for its successor liability claim against CDT, for two reasons. First, successor liability is an equitable doctrine, Steinbach v. Hubbard, 51 F.3d 843, 846 (9th Cir. 1995), and is therefore not a contract claim. Exxess Electronixx, 64 Cal. App. 4th at 714. Second, as set forth in this court's Order on Plaintiff's Motion to Add CDT, Inc. as a Party, plaintiff is not the prevailing party on its successor liability claim.

The question, therefore, is to what extent the issues involved in these claims were "common" or "intertwined" with the issues related to the breach of contract action against Opsys Limited.

B.  Commonality

1.  Fraud Claims and Breach of Contract Claims Against CDT Limited

Plaintiff conclusorily claims that its initial pleading of fraud in the inducement of the Lease arises from the same nucleus of facts and relates to the Lease. Defendant asserts that all fees generated by plaintiff's initial counsel should be discounted, because defendant's successful Rule 12(b)(6) motions were the subject of almost all of plaintiff's initial counsel's time. Additionally, defendant asks the court to discount the initial work performed by plaintiff's current counsel, which was directed toward amending plaintiff's original "shoddy" complaint. Defendant claims that it should not be held accountable for plaintiff's counsel's need to "clean up" the poor representation at the outset of this action.

According to plaintiff's calculations, plaintiffs incurred fees in the amount of $6,200 from their initial counsel. It is not clear how much time was directed toward 12(b)(6) and "clean up" issues by plaintiff's current counsel, though plaintiff's chart includes $71,137.50 for "Initial Case Analysis." Defendant should not be liable for plaintiff's poor choice of initial counsel. Accordingly, the $6,200 in attorneys' fees from plaintiff's initial counsel is not recoverable. In terms of the "Initial Case Analysis," plaintiff's current counsel would have had to do a certain amount of review and analysis regardless of whether any previous attorneys have been involved. Accordingly, the fees for "Initial Case Analysis" are recoverable.

7

### 2. Successor Liability Claim

Plaintiff asserts that fees incurred through its efforts to add CDT, Inc. as a successor party are clearly recoverable, apparently because plaintiff sought to add CDT, Inc. in aid of enforcement of the judgment. As a legal matter, plaintiff is incorrect. The Lease provision, which is the only operative attorneys' fee provision for the purposes of this motion, allows for fees only to enforce the provisions of the lease. As noted above, successor liability is a separate, equitable claim which does not arise from the contract. Only the Assignment provision mentions the enforcement of judgments, and relief under that clause is unavailable.[2]

Turning to the commonality of issues between the breach of contract claim against Opsys Limited and the successor liability claim against CDT, Inc., plaintiff claims that it is entitled to fees for its initially pled unconsented assignment claim, which plaintiff admittedly dropped to "avoid confusing the jury." Mot. at 8. Plaintiff conclusorily asserts that this claim was "integrally related to the breach of contract claim." In response, defendant cites passages of the Second Amended Complaint ("SAC") which suggest that plaintiff's claims against CDT, Inc. are wholly separate from its claims against Opsys Limited. The SAC states that its substantial allegations regarding CDT, Inc. were "asserted both (1) to establish the relevance of discovery to be directed to [CDT, Inc.] given [CDT, Inc.]'s knowledge of Opsys Limited's bad faith effort to avoid its lease obligations, and (2) to support later amendment as described below at paragraph 26. SAC ¶ 20. Paragraph 26 states that "plaintiff will seek leave to add Cambridge Display Technology, Inc. as a defendant successor to Opsys Limited at such time as the primary liability of Opsys Limited is established."

Ultimately, plaintiff proved only that Opsys Limited remained a party to, and breached, the Lease. The complicated factual background related to CDT, Inc. was largely irrelevant to these findings, which formed the basis for the single claim on which plaintiff prevailed. Accordingly, the court finds that the issues associated with plaintiff's successful claim were not so intertwined with

8

the issues surrounding CDT, Inc. as to warrant attorneys' fees for work related to CDT, Inc.'s alleged successor liability.

Plaintiff's calculations allocate 55.8 hours, valued at $20,060.50, to "Efforts to Add CDT, Inc." Mot at 6.  Defendant claims that this understates the time related to CDT, Inc.  In particular, defendant asserts that most of the 264.65 hours ($71,137.50) for initial case analysis were devoted to reviewing CDT, Inc.'s public filings and press releases to develop a successor liability theory. Defendant additionally cites substantial discovery related to CDT, Inc., and claims that most of the time devoted to expert discovery concerned successor liability.  Defendant further claims that CDT, Inc. issues contributed to trial preparation fees in the form of motions in limine related to CDT, Inc. Thus, defendant asserts that virtually all of plaintiff's claimed post-verdict work pertains to successor liability, and is therefore not recoverable.  Defendant also points to plaintiff's lack of success on its claim for breach of the covenant of good faith and fair dealing in arguing for a reduction in the amount of fees attributable to CDT, Inc. issues.

To the extent that plaintiff's initial case analysis involved exploring claims against CDT, Inc., plaintiff is entitled to those fees.  However, because plaintiff's claims against CDT, Inc. were ultimately unsuccessful, plaintiff may not recover fees attributed to work regarding CDT, Inc. beyond initial case analysis.

### 3. Mitigation

Finally, defendant claims that plaintiff's fee award should be reduced in light of defendant's asserted successful mitigation claim.  As noted above, attorneys' fees related to affirmative defenses are recoverable as part of a contract claim.  Siligo, 21 Cal. App. 4th at 878.  Although plaintiff was not awarded the full recovery sought, it was clearly the prevailing party notwithstanding any possible findings by the jury as to mitigation (which themselves are unclear).  Accordingly, the court may, but need not, reduce plaintiff's attorneys' fee award based on the mitigation issue.  The court finds, however, that plaintiff substantially prevailed on its breach of contract claim and therefore no reduction in attorneys' fees is necessary based on defendant's mitigation defense.

9

III.     Sufficient Explanation

In addition to the categorical claims discussed above, defendant raises several objections to specific entries in plaintiff's fee accounting, and argues as a general matter that plaintiff's labels provide insufficient explanation for each class of fees. In particular, defendant asserts that there is no clear distinction between "Document Management," "Fact Discovery," "Expert Discovery," "Trial Preparation" and "Trial." The court does not find these classifications to be overly obtuse, and therefore declines to reduce the fee request based on plaintiff's choice of categorization.

Defendant also argues that "Efforts to Add CDT, Inc." appears to be duplicative of all of plaintiff's post-verdict work. Plaintiff claims 13.8 hours for "Post-Verdict," 35.65 hours for "Fee Application," and 55.8 hours for "Efforts to Add CDT, Inc." The fee application and post-verdict numbers appear reasonable. It is unclear from plaintiff's chart whether the "Efforts to Add CDT, Inc." included work before and after the verdict. It seems likely that additional work related to CDT, Inc. was included in other categories, including expert discovery. Because plaintiff is not entitled to these fees, the inclusion of this work mandates a reduction in the total fee award.

Defendant also objects to plaintiff's claim of nearly fifty hours' worth of fees related to a six-hour mediation. Plaintiff actually ascribes this number of hours to "Mediation & Settlement." Even assuming that fifty hours is an unreasonable time to spend preparing for a six-hour mediation session, the inclusion of settlement activities within this amount renders the number of hours worked reasonable.

Finally, defendant claims that plaintiff is seeking an unreasonable amount of time—more than 320 hours—for work related to opposing defendant's motion for summary judgment. This number is likewise not unreasonable. The summary judgment motion involved a great deal of documentary evidence and covered several claims and defenses.

10

CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART defendant's Motion for Attorneys' Fees and Costs. Defendant's motion is DENIED to the extent that it seeks an award of costs and expenses. Defendant's motion is GRANTED IN PART as to attorneys' fees. Defendant shall submit within thirty (30) days of the date of this order a declaration setting forth in detail the work and the dates of the work performed in connection with the following categories listed in their submissions:

Initial Case Analysis
Efforts to Add CDT, Inc.
Post-Verdict
Estimate 3/24 - 5/16

and all contemporaneous time records and/or billing records if the latter reflect contemporaneous entries.

IT IS SO ORDERED.

Dated: August 29, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

11

### **ENDNOTES**

1. Defendant further asserts that the jury's allegedly inconsistent verdict renders attorneys' fees unavailable. As discussed in this court's Order on Plaintiff's Motion for Judgment as a Matter of Law and For a New Trial, the jury's verdict was not inconsistent, and therefore this argument is rejected.

2. Additionally, it is not at all clear that the phrase "enforce any judgment" would include a claim of successor liability, rather than a separate action or proceeding to enforce the judgment against Opsys Limited.